# WALTER W. WALTON, Respondent, v. PHOENIX INSURANCE COMPANY, Appellant.

St. Louis Court of Appeals.    Argued and Submitted November 9, 1911.    Opinion Filed December 5, 1911.

1. **TRIAL PRACTICE: Inferences: Province of Jury.** The jury may draw every reasonable inference which the evidence suggests.

2. **FIRE INSURANCE: Forfeiture of Policy: Vacancy Clause: "Occupancy" Defined.** The occupancy of a dwelling-house, within a fire insurance policy, which stipulates that it shall be void if the house becomes vacant or unoccupied and remains so for ten days, means that some persons must be living in it; but the occupancy of a house by one who is there *possessio pedis* is sufficient to satisfy the requirements of such stipulation, although the house is not his place of abode.

3. ——: ——: ——: **Sufficiency of Evidence.** In an action on a fire insurance policy, evidence *held* to support a finding that the dwelling-house which had been consumed by fire was not unoccupied for ten days prior to the fire, within a stipulation of the policy to the effect it should be void if the house became unoccupied and remained so for ten days.

4. **INSURANCE: Construction of Policies.** Courts do not enlarge or extend terms of insurance policies in an effort to defeat them, but, in the construction of doubtful terms, adopt that construction which is most favorable to insured.

5. **FIRE INSURANCE: Forfeiture of Policy: Vacancy Clause: Burden of Proof.** The burden of proof to establish the breach of the condition of a fire insurance policy, rendering it void if the dwelling should become vacant or unoccupied and remain so for ten days, is upon the insurer.

6. **APPELLATE PRACTICE: Conclusiveness of Verdict.** A verdict rendered upon conflicting evidence and under proper instructions, which is approved by the trial court, is conclusive, on appeal.

7. **MORTGAGES AND DEEDS OF TRUST: Rights of Mortgagee: Collection of Rents.** The mortgagee of real property, after condition broken, has the right of entry and of collecting and retaining the rents, unless such course is contrary to the covenants in the mortgage. If he enters and does not rent, he is bound to account to the legal owner, the mortgagor, for the rental value of the premises, but the question as to his liability therefor is one which could arise only between him and the mortgagor.

8. **CONVEYANCES: Necessity of Delivery: Escrow.** Where a mortgagor of real property agrees with the mortgagee to convey the property to him if he will surrender the notes secured by the mortgage, and the mortgagor thereupon executes a deed and delivers it to a third person *in escrow*, for delivery to the mortgagee on the performance of a specified condition, the legal title to the property remains in the mortgagor until the condition·is performed and the deed is delivered to the mortgagee.

9. **FIRE INSURANCE: Forfeiture of Policy: Change of Title.** The possession of real property by a mortgagee who enters after condition broken is not inconsistent with his position as mortgagee, nor is he the absolute owner of the property within a clause of a fire insurance policy issued to the mortgagor, avoiding the policy on a transfer of title to the property.

10. ———: ———: ———. Where, after condition broken, a mortgagee of real property entered and the mortgagor executed a deed to him, which was delivered to a third person *in escrow*, for delivery on the performance of a specified condition, and the mortgagor agreed to pay the mortgagee rent for the premises thereafter, the legal title to the property was not divested out of the mortgagor and invested in the mortgagee until delivery of the deed was made to the latter by the third person, and hence the transaction did not breach a provision of a fire insurance policy, rendering it void on a transfer of title to the property.

11. **INSTRUCTIONS: Refusal: Ignoring Facts.** A requested instruction which ignores an essential fact supported by ample evidence is properly refused.

12. **FIRE INSURANCE: Right of Mortgagee to Sue: Parties.** A mortgagee of real estate, who is in possession of the premises after condition broken, may maintain an action on a fire insurance policy, which was issued to the mortgagor and which stipulates that any loss shall be payable to the mortgagee as his interest may appear; and the mere fact that the mortgagor has executed a deed of the property to the mortgagee and has deposited it with a third person *in escrow*, for delivery to the mortgagee on the performance of a specified condition, which has not been performed, does not defeat the right of the mortgagee to sue.

13. ———: **Powers of Agents.** Local agents of insurance companies, vested with authority to make contracts to insure property, countersign, issue and deliver policies, and receive premiums, stand in the place of the companies in dealing with applicants for policies, and may waive stipulations which purport to be essential to the validity of the contract.

14. ———: **Right of Mortgagee to Sue: Estoppel to Deny Right: Actions of Agent.** Where an agent of a fire insurance company

issuing a policy stipulating for the payment of the loss to a mortgagee, through a bank, of which the agent was cashier, advised that the policy could not be assigned by insured to the mortgagee, the company was estopped to claim that the mortgagee could not sue on the policy without an assignment, provided the company knew that the agent acted for the bank as well as for insured and the mortgagee in the transaction.

Appeal from St. Francois Circuit Court.—*Hon. Charles A. Killian,* Judge.

AFFIRMED.

*M. R. Smith* and *Fyke & Snider* for appellant.

(1) The evidence is undisputed, the house was vacant and unoccupied for ten days before the fire. The court by instructions given, recognized the provision of the policy that if the property became vacant and unoccupied and so remained for ten days the insurance should be void, as valid, and the law of the case, and upon that theory should have sustained the demurrer to the evidence. Hoover v. Ins. Co., 93 Mo. App. 111; Cook v. Ins. Co., 70 Mo. 610; Craig v. Ins. Co., 34 Mo. App. 481. (2) The policy became void when the insured, Wheeling, deeded and delivered possession of the property insured to Walton. The change of title and possession made it so. It at the same time became void as to the mortgagee because the mortgage interest was insured "subject to all the terms and conditions of the policy." Kambrich v. Ins. Co., 48 Mo. App. 393; Kempf v. Ins. Co., 41 Mo. App. 27; Manning v. Ins. Co., 123 Mo. App. 456; Bamerd v. Ins. Co., 27 Mo. App. 26. (3) Plaintiff sued as mortgagee. His mortgage was canceled by the transfer of the property to him to satisfy and in payment of the debt and no interest as mortgagee remained to sustain a claim in his favor as mortgagee under the policy. Griswald v. Ins. Co., 70 Mo. 654; Ins. Co. v. Davis, 60 S. W. 802; Reynolds v. Ins. Co., 60 Pac. 467; Hoxsie v. Ins. Co., 6 R. I. 517.

*Marbury & Hensley* for respondent.

(1) A local agent, vested with authority to make contracts of insurance, countersign, issue and deliver policies and receive premiums, stands in the place of companies and may waive stipulations which purport to be essential to the validity of the contract. Rudd v. Ins. Co., 120 Mo. App. 10; James v. Ins. Co., 135 Mo. App. 1; Riley v. Ins. Co., 117 Mo. App. 234. (2) A fire insurance policy, which stipulates that certain given changes in the title to the property insured will render the entire policy void, may be and is waived when the agent issues the policy with full knowledge of all the circumstances resulting in such changes or attempted changes of title, and especially so when the agent assents to such changes, and conclusively so when he advises and directs such changes, and does not seek to avoid such policy and return the unearned premium. Millis v. Ins. Co., 95 Mo. App. 216; O'Brien v. Ins. Co., 95 Mo. App. 303; Field v. Ins. Co., 140 Mo. App. 166; Trust Co. v. Ins. Co., 79 Mo. App. 362; Griswold v. Ins. Co., 1 Mo. App. 97. (3) A person in possession of real estate, under a contract in escrow and deed in escrow for title upon payment of the purchase money, is not the sole, entire and unconditional owner thereof, and these facts do not avoid the policy, and he has no insurable interest as such escrow owner. Harness v. Ins. Co., 62 Mo. App. 248; Hubbard v. Ins. Co., 57 Mo. App. 1. (4) The tenant was moving his family, and had moved several loads into the house, which was destroyed by fire, and had arranged and placed the furniture so moved; he did not get through, on account of rain, and left a portion of his furniture in his former home, and he and his family occupied his former home on the night of he day during which he was moving. The house into which he was moving had been vacant from September 28th to October 6th, inclusive. The new home,

which was the one insured, was not vacant within the stipulations of the policy against vacancy for the reason that it was not vacant and so remain for ten days. Norman v. Ins. Co., 74 Mo. App. 460; Brewing Co. v. Ins. Co., 63 Mo. App. 663; 8 Words and Phrases, p. 7258. (5) The stipulation of the policy that if the building "be and become vacant or unoccupied and so remain for ten days," is not violated if the property is not vacant. The distinction between "vacant" and "unoccupied" is, the latter condition being broken when the house was either empty or unused as an abode, while the former requires a concurrence of the absence of the occupant and the removal of the inanimate contents of the premises. Norman v. Ins. Co., 74 Mo. App. 460; 8 Words and Phrases, p. 7258; 1 May, Ins. (3 Ed.), par. 249a; Estrauder, Fire Ins. (2 Ed.), par. 144; Couch v. Fire Ins. Co., 72 N. Y. Supp. 97. (6) Under a policy of fire insurance, such as is herein sued on, the burden of proof to show the vacant or unoccupied condition of the building is upon the appellant. Brewing Co. v. Ins. Co., 63 Mo. App. 663; Hoover v. Ins. Co., 93 Mo. App. 11.

REYNOLDS, P. J.—Plaintiff Walton, then the owner of a house and lot in Frankclay, St. Francois county, sold and conveyed it to one Wheeling, and for all or part of the purchase money took back a deed of trust on the same property, the deed being evidenced by thirty-three notes executed by Wheeling. Walton desired to raise $500 on these notes and submitted the proposed loan to the Irondale Bank, of which one Adams was cashier. Adams was also, at that time and place, agent of the Phoenix Insurance Company, the defendant and appellant here. When Walton applied for the loan Adams, after consultation with the president of the bank, agreed to make it with the deed of trust and notes as collateral security, provided insurance was taken out on the house. To this Walton

agreed, whereupon defendant, through this agent Adams, issued its insurance policy by which it insured Wheeling for the term of three years against loss or damage by fire, to an amount not exceeding $1000 on the frame building situated on the lot referred to, the policy subject to all the conditions therein contained. It was written in this policy, "loss, if any, hereunder is payable to W. W. Walton through Irondale Bank as mortgage interest may appear." Adams stated in explanation of this, that by making the loss payable through his bank, if that occurred the bank would be able to protect itself by having the funds in its own hands.

The conditions in the policy involved were that of ownership of the property in Wheeling, and that the policy shall be void "if a building herein described, whether intended for occupancy by owner or tenant, be or become vacant or unoccupied and so remain for ten days." This policy seems to have been signed by Adams, as agent for the company defendant. Thereupon the Irondale Bank made the loan of $500, Walton putting up the deed of trust and notes as collateral and executing the ordinary bank collateral note, and apparently retaining the policy until after the fire, when he sent it in to the bank or to Adams, as agent of the defendant company. It appears that afterwards Wheeling, having paid only about twenty dollars on the debt and having told Walton that he could not pay any more, offered to deed back the property to Walton if the latter would surrender to him his notes which were secured by the deed of trust. This was agreed to, the agreement further providing that all moneys arising from the sale of the house, over and above $804.60, the balance owed by Wheeling on the notes should be paid over by Walton to Wheeling, but that if on a sale of the property Walton was unable to obtain more than the amount of the debt, nothing was

162 App.—21

coming to Wheeling. Thereupon Wheeling and his
wife executed a general warranty deed for the prop-
erty, conveying it to Walton. This deed, by agree-
ment, was not delivered to Walton but was left in the
hands of a Mr. Clay in escrow, to be delivered to Wal-
ton when he had taken up the notes held as collateral
by the bank and returned them to Wheeling. After
the execution of this agreement and of this warranty
deed and the placing of the latter in the hands of Mr.
Clay in escrow, Wheeling and Walton went into the
Irondale Bank and informed Adams of it, talked over
the effect of it on the title to the property and asked
Adams about the necessity of an assignment of the
policy from Wheeling to Walton. Wheeling said he
would assign the policy then or later, but saying he
was in a hurry left the bank. Walton remained and
took up the matter of the assignment with Adams.
Adams told Walton that "on account of this deed not
being in his own hands that he couldn't claim to be
the absolute owner of that property, consequently he
couldn't make a transfer of the policy, until he traded
for the property." Adams testifying, said he knew
from Mr. Clay that he (Clay) had the deed in escrow
and that Clay was holding it on the understanding that
when Walton raised these notes from the Irondale
Bank or delivered the notes to Clay or delivered Clay
a receipt from Wheeling for the notes, he would de-
liver the deed to Walton and the latter would be-
come the absolute owner of the property. It was on
this state of facts that Adams said that no assignment
of the policy from Wheeling to Walton should be and
none was made, he (Adams) being of the opinion that
until the delivery of this deed to Walton, he was not
the owner of the property, and so he told Walton.
Adams also testified that the defendant Insurance
Company was aware of the fact that he was also the
cashier of the Irondale Bank and that when he
(Adams) issued the policy on the property, he had,

in due course, notified defendant of its number and
series and of the mortgage clause.  After Walton and
Wheeling had made their agreement and the deed had
been lodged in escrow, Wheeling turned over the pos-
session of the house to Walton, agreeing to pay him
rent in lieu of the unearned portion of the premium
on the insurance policy.  Wheeling never paid any rent
and after occupying the premises for a short time
moved out and it was thereafter occupied by different
tenants of Walton until about the 27th of September,
1907, on which date the tenant then occupying it moved
out.  Walton thereupon rented it to a man named Bass.
The original arrangement between Bass and Walton
was that the former was to take possession about the
15th of October, that being the date upon which the
lease on the house in which he was then residing ex-
pired.  Walton afterwards told Bass that the prop-
erty was insured and that he would like to have him
move in right away; that he might move in a little of
his furniture; that he need not move the best of it, but
to move something in that was not very valuable, so
as to protect his insurance.  Bass agreed to this, but
when he started to move in part of his furniture he
and his wife changed their minds and concluded they
would move altogether.  Accordingly on Monday the
7th of October, they moved three loads of furniture
into the house.  Before the moving had been com-
pleted, it commenced raining and the effort to move
the rest of the furniture stopped.  Bass and his wife,
however, went up in the afternoon to the house and
put the furniture which had been removed in the rooms
in which they wanted it.  They also cleaned up the
floors, ready to move in and place the remainder of
their furniture the following morning.  The three
loads of furniture moved contained tubs, boxes, old
chairs, etc., as also a set of parlor furniture and a bed-
room set.  Mr. and Mrs. Bass remained in the house
arranging the furniture until between four and five

o'clock that evening, and then returned to their former home, sleeping there that night. It appears that the fire broke out in the Wheeling house about two o'clock on the morning of the 8th of October, the time, however, not being fixed with certainty. At all events it broke out in the night of the 7th or morning of the 8th of October and the building and its contents were entirely destroyed. Walton resided in Washington county and not at Frankclay and at the time of the fire was in St. Louis. Bass said he had not seen him after about the end of September or first of October, until after the fire, when on being informed by letter of the fire, Walton went to Irondale and turned the policy of insurance over to Adams, either he or Adams writing to defendant to send blank proofs of loss. Defendant declined to send any, claiming that under the terms of the policy it was not liable. Thereupon this suit was instituted.

The petition contained two counts. The first averred that there was an agreement on consideration of which Wheeling was to assign to plaintiff the insurance policy, but that he had neglected and refused to do so, and Walton claiming to be owner, sued for the total insurance. The second count claims $1000 as the amount of loss on the building, it being averred in this count that Wheeling was the unconditional and sole owner and that plaintiff was the owner and holder at the time of the issuing of the policy and still is the owner and holder of the thirty-three promissory notes, aggregating $805 secured by the deed of trust and that under the terms of the policy the loss was made payable to Walton as mortgagee to the extent and amount of the promissory notes held by Walton, and averring that the amount due on the notes with interest is $1000, plaintiff prays judgment for that amount, averring that the fire occurred on the 8th of October, 1907. The first count was dismissed at the close of the evidence by plaintiff, defendant at the commencement

of the trial and again at its termination having moved that plaintiff be required to elect upon which count in the petition he would stand, the counts being repugnant. Whereupon plaintiff elected to stand upon the second count, dismissing as to the first.

The answer, apparently to the first count, by way of defense avers that the property was vacant and had been vacant for more than fifteen days prior to the burning thereof and that the destruction of the property was surrounded with suspicious circumstances for the reason that a load or two of old worthless household plunder had been stored in the property under the direction of plaintiff for the purpose of technically avoiding the provision in the insurance policy, that the vacancy of the house for more than ten days would work an absolute forfeiture of the policy and of the rights and advantages accruing thereunder to the insured or his assignee thereof. It is further averred that the property was vacant and unoccupied within the meaning and spirit of the policy at the time of the fire, and had been so for more than fifteen days theretofore. While this is distinctly pleaded as an answer to the first count, it seems to have been treated in the instructions, given after that count had been dismissed, as still in the case. As to whether this should have been done, we express no opinion, no point being made upon it. That part of the answer purporting to be levelled at the second count avers that neither Wheeling nor Walton had any interest in the property and that the policy was null and void; that it had never been transferred or assigned to Walton and that as a matter of fact Walton had no interest in it; that the title to the property insured had completely and fully passed out of Wheeling to Walton by the deed made to Walton on or about the 25th of April and that no arrangement, verbal or otherwise, had been made whereby Wheeling was to make an assignment in writing as required by the policy, to Walton and, clearly referring to the

first count of the petition, denies all knowledge of the pretended contract set out in it between Walton and Wheeling and avers that defendant gave no consent, verbal or otherwise, to any such arrangement. The answer to the second count concludes with a general denial of all other matters.

At the trial before the court and a jury there was evidence tending to establish the facts as set out by us, with the additional fact that it appeared that up to the time of the destruction of the property Walton had not taken up the notes from the bank held by the bank as collateral and had not returned them to Wheeling and had not taken the deed out of escrow nor had it ever been delivered to him. There was no evidence as to the origin of the fire and no facts in evidence even tending to connect plaintiff with the fire.

At the instance of plaintiff the court gave five instructions. As no error is assigned to them except generally that they should all have been refused and an instruction given for defendant, it is not necessary to set them out.

At the instance of defendant the court gave two instructions. The first told the jury that under the terms of the policy sued on, "if, before the fire complained of, the building insured became vacant or unoccupied and so remainded for ten days, said policy thereupon became void and plaintiff cannot recover in this action." The second instruction told the jury that occupancy of a dwelling-house means that some person is living in it, and if they found that for a period of ten days before the fire complained of, no person was living in the dwelling-house in question, then for such length of time the same was unoccupied.

Defendant asked two other instructions which were refused. The first, that under the pleadings and evidence plaintiff could not recover; the second, numbered four, "that if, after the policy sued on was is-

sued and before the fire described in the petition, J. R. Wheeling made a warranty deed to the property described in said policy to W. W. Walton, and at or about the date of said deed and before the fire referred to, paid or agreed to pay to said Walton rent for said property thereafter, said policy at that time became void and plaintiff cannot recover in this action.''

Exception was duly saved to the refusal of these two instructions and to the giving of the instructions on behalf of plaintiff. The jury returned a verdict for plaintiff in the sum of $976.57, being the amount of the principal and interest added to the date of the trial, the notes calling for interest at the rate of eight per cent per annum. Judgment followed from which defendant has duly perfected appeal to this court, having filed its motion for a new trial as well as in arrest and saved exception to these being over-ruled.

Defendant makes three points: First, that the evidence is undisputed that the house was vacant and unoccupied for ten days before the fire; that the court by its instructions had recognized this provision of the policy as valid and the law of the case and upon that theory should have sustained the demurrer to the evidence. Second, that the policy became void when the insured, Wheeling, delivered the possession of the property insured to Walton. Third, plaintiff sued as mortgagee but his mortgage was cancelled by the transfer of the property to him to satisfy, and in payment of, the debt, and no interest as mortgagee remained to sustain a claim in his favor as mortgagee under the policy. We cannot hold any of these assignments well taken.

The court by its second instruction given at the instance of defendant properly instructed the jury as to what was meant by the term ''unoccupied.'' With this instruction and the evidence before it, the jury must be held to have found as a matter of fact that

within the definition of "occupancy," as given by the court, these premises had not been unoccupied for a period of ten days. Whether there was any evidence from which the jury had a right to determine on this issue was for the trial court primarily, then for us, as an appellate tribunal. That the jury is authorized to draw every reasonable inference which the evidence suggests, is accepted law. The ten-day period of vacancy or lack of occupancy would expire on midnight of the 7th of October. While there was evidence tending to show that the fire had occurred after midnight and about two o'clock on the morning of the 8th, there was no positive evidence as to the exact time of the happening of the fire. It was within the province of the jury to determine whether in point of fact it had occurred before or after midnight of the 7th of October. There was ample evidence that in the sense of the law, this building was not "vacant" for a period of ten days. There was more household furniture in it than mere odds and ends. There was furniture for a parlor and a bedroom as well as a lot of kitchen furniture. This is uncontradicted. There was occupancy in fact during the 7th of the month, for the evidence is undisputed that until four or five o'clock of that day the tenant and his wife were actually in the house, sorting and arranging the furniture. They most certainly occupied it that day. It is said in many cases, that one who sleeps in a house may be said to occupy it; but no case to which we are referred or which we have found holds that, as a matter of law, sleeping in a house is essential to occupancy. When not a place of abode of man it is said by some authorities to be unoccupied. But this is a very general definition. One may occupy premises and yet those premises may not be his place of abode. One is in occupancy of a place when he is there *possessio pedis*. The person occupying may be a caretaker, a watchman, not having the house as his domicile. Still the house is occupied. The

question of occupancy and the meaning of that term and of the term "vacant," has been discussed by the Kansas City Court of Appeals in Norman v. Missouri Town Mutual Fire, etc.   Ins. Co., 74 Mo. App. 456. The terms of this policy do not define what the length or character of the occupancy is to be.   Hence there was evidence before the jury from which it might reasonably infer that the premises were occupied on that day and that they were not unoccupied for a period of ten days.   With these facts in evidence, the court was warranted in refusing to take the case from the jury on that proposition, and was warranted in submitting the question of occupancy to the jury.   It may be said that this is a very narrow construction of the policy as against the insurer.   But courts do not enlarge or extend terms of insurance policies in an effort to defeat the policy.   The very contrary is the rule. In construction of doubtful terms in a policy, that construction is to be adopted which is most favorable to the insured.   [Norman v. Missouri Town Mutual Fire, etc., Ins. Co., supra.]   We know of no reason why a jury is not also authorized to give the most liberal construction to the evidence in favor of the insured.   We cannot therefore agree with the contention of the learned counsel for appellant, that the evidence was undisputed that the house was vacant and unoccupied for ten days before the fire, and that there was no evidence of occupancy.   Moreover, the burthen of proof to establish the breach of the condition relied upon by the insurer is always upon the insurer.   [Hoover v. Mercantile Town Mut. Ins. Co., 93 Mo. App. 111, l. c. 115, 69 S. W. 42.]   The issue of vacancy and occupancy was distinctly presented to the jury; it had evidence before it both as to that and as to the time of the occurrence of the loss, and its finding, particularly when that finding is undisturbed by the trial court, is conclusive upon us.   We therefore hold that the first

proposition of the learned counsel for appellant is not tenable.

The second proposition, that the policy became void when Wheeling deeded and delivered possession of the property insured to Walton and that the change of title and possession made it so, is not sound for two reasons. First, as mortgagee, after condition broken, as was the case here, Walton undoubtedly had the right of entry and of collecting and retaining the rents. If he entered and did not rent he was bound to account to the legal owner, the mortgagor, for the rental value of the premises. The question as to his liability for the rental value of the premises, is one which could only arise between the mortgagor and mortgagee, but the right of possession in the mortgagee, after condition broken, is undoubted, unless contrary to the covenants in the mortgage, so that his possession was not conclusive of title, nor inconsistent with his position as mortgagee. Secondly, there is ample evidence on which the jury might find that there was never a delivery of the deed from Wheeling to Walton, that deed being placed and left in escrow by both of them in the hands of a third party. This court, in Hubbard v. North British & Mercantile Ins. Co., 57 Mo. App. 1, determined that a party in possession with an equitable claim to title and without the absolute legal investiture of title, is not the absolute owner and that an insurance policy which has been issued to that party on covenants of absolute ownership and investiture of title is not enforceable and the policy becomes void when it appears that the title was equitable merely, and that the legal title had not passed to the insured. This case is referred to approvingly by the Kansas City Court of Appeals in Harness v. National Fire Insurance Co., 62 Mo. App. 245. As long as the deed from Wheeling to Walton was in escrow in the hands of a third party, only to be delivered upon the performance of certain conditions by Walton, and inas-

much as it appears that those conditions had not been performed up to the time of the destruction of the property, it is clear as a matter of law as well as of fact in this case that the legal title of the premises was then in the name of Wheeling and not of Walton. This also justifies the action of the learned trial court in refusing the second instruction asked by the defendant. The fatal defect in that is that it makes no reference to the necessity of the delivery of the deed from Wheeling to Walton and bases the claim of Walton to the property as owner on the alleged agreement of Wheeling to pay Walton rental for the occupancy of the property by him. That did not create a legal estate in Walton nor divest it out of Wheeling, and the instruction as asked was properly refused.

The third proposition made by learned counsel is also untenable. By this second count of the petition upon which the case went to the jury, plaintiff sued as mortgagee, and he was such beyond all question as appears by the evidence in the case. It cannot be contended on the evidence in this case that the mortgage was cancelled. There was an agreement that it should be cancelled, and a deed transferring the title to the property from Wheeling to Walton was to be delivered when and upon the payment of the mortgage debt by satisfaction thereof on the part of Walton. The agreement is specific that he was to surrender or cause to be surrendered to Wheeling the remaining of the thirty-three notes held by the bank. There is no pretense that he had done this; on the contrary, there is affirmative and uncontradicted testimony that he has never done this and that those notes are still in the hands of the bank as collateral to Walton's unpaid $500 note. The deed was not to be and in fact never had been delivered to Walton by Wheeling or by the third party who held it, or by anyone else, and could not be delivered until the notes of Wheeling were released from control of the holder and delivered to Wheeling.

It is clear in this case that a failure to assign the policy, if it could have been assigned from Wheeling to Walton, was on the distinct advice of Adams, who was both the cashier of the bank through which the loss was payable, as well as agent for the insurance company. In Rudd v. American Guarantee Fund Mut. Fire Ins. Co., 120 Mo. App. 1, 96 S. W. 237, this court, speaking through Judge Goode, held (l. c. 11) : ''Local agents of insurance companies, vested with authority to make contracts to insure property, countersign, issue and deliver policies and receive premiums, stand in the place of the companies in dealing with applicants for policies and may waive stipulations which purport to be essential to the validity of the contract.'' Many authorities are cited in support of this proposition. It is the controlling rule in this state.

This action of its agent estops this defendant from now claiming as against payment of this loss that the policy should have been assigned to the plaintiff as owner (see Millis v. Scottish Union & National Ins. Co., 95 Mo. App. 211, l. c. 215 and following; 68 S. W. 1066; O'Brien v. Greenwick Ins. Co., 95 Mo. App. 301, 68 S. W. 976; Fields v. German American Ins. Co., 140 Mo. App. 158, l. c. 166, 120 S. W. 697), provided the defendant was aware of the fact that Adams was also acting for the bank, as well as for Wheeling and Walton in the transaction. Beyond the fact in proof that the defendant knew that Adams was also cashier of the bank, there is no direct proof of this. But it is not necessary to determine this matter of dual agency. Over and above that is the fact that the interest of Walton was that of mortgagee and not of owner. So that whether the act of Adams in advising against any assignment was the cause of failure to make an assignment of the policy from Wheeling to Walton as owner of the premises and so estops defendant is immaterial, for such an assignment under the facts in the case would not change the situation. Hence we

need not consider whether the defendant was estopped by the knowledge of Adams and his advice that no assignment was necessary.

We hold that the assignments of error relied upon by learned counsel for appellant are not well taken and that the judgment of the circuit court should be and it is affirmed. *Nortoni* and *Caulfield, JJ.*, concur.