W. F. FLOREA, AND JOHN FAHEY, TIM FAHEY, AND ALPH FAHEY, A CO-PARTNERSHIP, DOING BUSINESS UNDER THE FIRM NAME OF FAHEY BROS., RESPONDENTS, v. IOWA STATE INSURANCE CO., A CORPORATION, APPELLANT.—32 S. W. (2d) 111.

St. Louis Court of Appeals. Opinion filed November 5, 1930.

*E. L. Snider* and *J. D. Dorian* for appellant.

*Claude M. Smith* and *Brown, Gibbons & Brown* for respondents.

BENNICK, C.—This is an action upon a policy of fire insurance. Tried to the court without the aid of a jury, a judgment was rendered in plaintiff's favor for the aggregate sum of $2794.60,

representing the full face value of the policy, with interest thereon at the rate of six per cent. from March 30, 1929, the date of the loss, together with an allowance of the ten per cent. penalty and the sum of $500 as attorney's fees for vexatious delay. A motion for a new trial was filed and overruled, following which the defendant has duly appealed the case to this court.

The policy was issued by defendant to one Elliott, insuring the property described therein against loss by fire or windstorm in the sum of $2000, for a period of five years, beginning January 26, 1927, and expiring January 26, 1932. Attached to and forming a part of the policy was a loss-payable clause, providing that the loss should be adjusted with the insured, and should be payable to the insured and to Fahey Bros., mortgagees, as their respective interests might appear.

Among the several clauses of the policy was the provision that the entire policy should be void if the interest of the insured be other than an unconditional and sole ownership; if the subject of the insurance be a building on ground not owned by the insured in fee simple; if any change, other than by the death of the insured, took place in the interest, title, or possession of the subject of the insurance; or if the building therein described, whether intended for occupancy by the owner or a tenant, should be or become vacant or unoccupied, and so remain for ten days.

Thereafter the property was sold by Elliott to one Klote, on March 17, 1928, by whom it was in turn conveyed by general warranty deed to plaintiff Florea and Nellie M. Florea, his wife, subject, however, to the deed of trust theretofore executed in favor of Fahey Bros., mortgagees. In each instance an assignment of the policy was duly made and consented to by defendant company, the assignment to Florea having been recognized by the company, through its secretary, on June 5, 1928.

There is no dispute about the fact that the building was totally destroyed by fire on the night of March 30, 1929, nor is there any question about the payment of the premiums, or the making of proof of loss.

Florea has sued as the insured and owner of the property described in the petition at the time of the loss, while Fahey Bros. have been joined as parties to the action by virtue of being mortgagees, with an interest in the proceeds under the loss-payable clause.

The sufficiency of the petition for an action of this character is not brought into question.

Two defenses were interposed and relied upon by defendant in its answer, the first of which was that the policy was void, in that Florea, before the loss was sustained, had executed a contract of purchase and sale with one Murphy; that Florea was therefore not the unconditional and sole owner of the property; that he had

ceased to be the owner thereof; that the subject of the insurance became and was a building situated on land not owned by the insured in fee simple; and that on account of the change in title, interest, and possession, the policy under its terms was rendered void.

The second defense was that the property became and remained vacant and unoccupied for more than ten days prior to the fire, on account of which fact the policy became null and void.

The reply was a denial of the new matter set up in the answer.

At the termination of the case, findings of fact and conclusions of law were filed by the court at the request of the plaintiffs, and judgment was rendered in the form and manner that we have heretofore indicated.

Material facts, other than those already mentioned, will be hereinafter noted in connection with particular points arising for decision.

In support of its contention that the judgment of the lower court may not be sustained upon any theory in the case supported by substantial evidence, the same propositions are brought to our attention as were urged by the company as defenses below.

Considering these matters in their inverse order, we have the argument that there was a breach of that condition of the policy providing that the same should be void if the building described therein, whether intended for occupancy by the owner or his tenant, should be or become vacant or unoccupied, and so remain for ten days.

Upon this point the evidence disclosed that the premises had been let to one Linson; that he had rented a farm known as the Cabeen Farm, and in March, 1929, prepared to move from the premises of the insured; that prior to March 10th, Linson's wife had gone to visit her parents, and had taken the two children along with her; that after said date, neither she nor the children lived on the Florea farm; that Linson himself ate his meals and slept at the home of his wife's parents, save for the night of March 20th, when he slept in the insured premises; that he began moving his household effects away as early as March 17th, and moved the last load on March 28th, two days before the fire; and that certain articles of his furniture were yet in the house at the time of the fire, and were totally destroyed with it.

As we view the record, the finding of the trial court for plaintiffs upon this issue is not to be disturbed. We fully appreciate the fact that a stipulation such as that now under consideration is one that the parties might lawfully make, and to which effect must be given, but yet in the construction thereof the court will not enlarge the meaning of the words used so as to save the insurer from its obligation, but it will rather be inclined to hold it to the strict terms of its contract. Otherwise stated, we will apply the usual rule for the construction of an insurance contract, that if the words used are of

doubtful meaning, or if an ambiguity exists which is fairly susceptible of different interpretations, then that construction will be adopted which is most favorable to the policyholder. [Pabst Brewing Co. v. Union Insurance Co., 63 Mo. App. 663; Norman v. Missouri Town Mutual Fire, etc. Insurance Co., 74 Mo. App. 456; Walton v. Phoenix Insurance Co., 162 Mo. App. 316, 141 S. W. 1138.]

Certainly the house was not vacant within the meaning of the policy, for the evidence shows without contradiction or dispute that a substantial portion of the tenant's household goods were yet in it at the time of the fire, and were destroyed along with it. [Norman v. Missouri Town Mutual Fire, etc., Insurance Co., supra.] But the condition of the policy relied upon was drawn in the alternative, and even though the building described in the policy was not vacant, if it was unoccupied, and so remained for a period of ten days, then plaintiffs were not entitled to a recovery, absent an abrogation of the condition by a subsequent agreement, which is not claimed, or a waiver by the company.

Generally speaking, the cases say that the term "occupancy" refers to human habitation, and means the act of living in a particular house, and that occupation is at an end whenever the building is no longer the place of abode of any living person. Often proof of whether any one has slept in the house during the prescribed period is strongly emphasized, and it was in this case, but we know of no decision which goes so far as to hold as a matter of law that sleeping in a house is in all events essential to occupancy. Such fact is undoubtedly highly material upon the question of occupancy, but it will not be necessarily decisive of it under all circumstances. Thus we find the rule to be that where there is no condition or stipulation in the policy whereby the insured obligates himself either to limit or to extend his occupancy to any particular purpose, then any occupancy will suffice which satisfies the letter of the condition of the policy, even though it may be by one who is there *possessio pedis*, such as a caretaker or watchman, not having the house as his domicile. [Walton v. Phoenix Insurance Co., supra; Pabst Brewing Co. v. Union Insurance Co., supra.]

Here there is no getting away from the fact that the tenant's family as a whole were not living in the insured premises for a period longer than ten days before the fire, if we use the term "living" as having reference to the ordinary occupancy of a home by the family. Yet we cannot say that they had abandoned their former home, for the substantial portion of their household goods was still in it, even as late as two days before the fire. Furthermore, Linson himself slept in the insured premises on the morning of March 21st, which was clearly within the ten-day period.

It is also of significance that the policy only required that the premises be not unoccupied for a period of more than ten days,

without in anywise undertaking to specify the character of the occupancy, other than that it might be by either the owner or his tenant. The proof is clear that the tenant was in charge of the premises even up to the time of the fire, and that he was continually exercising all the prerogatives which went along with his right to occupy the house. Whether he was inside of it every day does not appear, but he was at least in control of it. Under these circumstances, we think it was for the court, as the trier of the facts, to say whether the building described in the policy became unoccupied and remained so for ten days before the occurrence of the loss; and with substantial evidence to support the finding made, the point is not available to defendant as a ground for the reversal of the judgment.

The second defense, namely, that Florea was not the sole and unconditional owner of the property at the time of the loss, that he had ceased to be the owner thereof, that the subject of the insurance became and was a building situated on ground not owned by the insured in fee simple, and that on account of such change in title, interest, and possession, the policy became void, was based upon the fact that on December 28, 1928, Florea entered into an executory contract of sale with one Murphy, said contract to be completed, upon certain terms and conditions specified therein, on March 1, 1928.

Had this contract been completed, there would be no doubt about the propriety of the company's present contention, but plaintiffs' evidence showed that the contract was subsequently abandoned by mutual consent, and that the conveyance to Murphy, which was made on May 21, 1929, almost a month after the fire, was pursuant to a new contract entered into contemporaneously with the execution of the deed. Thus the finding of the court that there had been no breach of the conditions in question was based upon substantial evidence, so as not to be subject to interference on this appeal.

Another objection to the judgment, in so far as it went in favor of plaintiff Florea, is that he, under defendant's theory, was not a real party in interest to the action, and was therefore not entitled to maintain the same. This suggestion is founded upon his statement while on the stand that he had no pecuniary interest in the litigation, and did not expect to receive any of the money that might be recovered from the insurance company, presumably upon the theory that the indebtedness due the mortgagees exceeded the face value of the policy.

We think there is no merit in this contention. At the time the policy was assigned to him with the consent of the company, as well as at the time of the loss, Florea was the owner of the property, and therefore possessed of an insurable interest in it. [White v. Merchants' Insurance Co., 93 Mo. App. 282.] Furthermore, when the fire occurred, the rights of the parties became fixed, and the subsequent convey-

ance of the land to Murphy could not serve to preclude Florea's recovery on the policy. [Everett v. Patrons' & Farmers' Mutual Fire Insurance Co., 222 Mo. App. 1010, 7 S. W. (2d) 463.]

Conceding that the extent of the debt owing to the mortgagees may have foreclosed to Florea the right to share in the proceeds, he was yet the owner of the bare legal title to the cause of action, and as such was a real party in interest under section 1155, Revised Statutes 1919, and entitled to maintain an action thereon, even though the beneficial ownership was vested in another. [Swift & Co. v. Wabash R. Co., 149 Mo. App. 526, 131 S. W. 124; Keeley v. Indemnity Co. of America, 222 Mo. App. 439, 7 S. W. (2d) 434.] It would seem under the circumstances that either Florea or Fahey Bros. might have brought the suit alone, Florea as the trustee of an express trust, and Fahey Bros. as the parties for whose benefit the contract was made, but nevertheless, under the terms of the loss-payable clause, it was proper for them to be joined as plaintiffs, since no matter how they sued, a recovery by either or both would bar any further action on the policy. [Farmers Bank v. Manchester Assurance Co., 106 Mo. App. 114, 80 S. W. 299; Anthony v. The German American Insurance Co., 48 Mo. App. 65.]

As to Fahey Bros., defendant argues that there was no evidence to show that there was a debt due them at the time of the trial, or, if so, what the amount of their interest was, and that, consequently, the judgment in their favor was not supported by any evidence. Perhaps there was no evidence to show the amount owing them at the time of the trial as distinguished from the time of the loss, but it was shown that at the time of the fire, when the rights of the parties were determined, the outstanding indebtedness under the deed of trust was as much as $4200, which fact was sufficient to warrant the rendition of the judgment in their favor.

Another point made is that when the policy became void, as defendant assumes, because of the contract made by Florea with Murphy, and because of the vacancy, it remained void and was not reinstated; and that because of such contract there was no insurable interest remaining in Florea to support a policy, and the policy was not revived, if and when the contract with Murphy expired. If what we have already said is not in itself a sufficient answer to this argument, suffice it to say that the policy never became void, under the most favorable view of the evidence from plaintiffs' standpoint, and therefore there is no question of reinstatement or revival in the case.

Finally defendant argues that the allowance of the statutory penalty and attorney's fees as for vexatious refusal was not warranted under the evidence.

Upon this issue the evidence disclosed that three days after the fire, when Florea first learned of it, he notified the company's agent, who in turn notified the company; that a month later the company's

adjuster came to the scene, and inquired about and was shown the contract with Murphy; that some time later Florea had a second conversation with the agent; that neither the agent nor the adjuster was able to say at any time whether the company would pay the loss; and that Florea finally wrote the company direct relative to the matter, but received no reply from it.

J. P. Fahey, one of the mortgagees, testified that he too advised the company's agent of the loss; that the agent later informed him that he had received no response from the company; that he then consulted a second agent, who told him that the company had sold out to a New York company; that he had his banker write the company, but received no reply; and that the first response he was ever able to get from the company was after he employed an attorney, to whom the company wrote, denying liability.

We appreciate the fact that insurance companies, acting in good faith, may contest issues either of fact or of law without subjecting themselves to the penalty, but even though there may be an issue of either character in the case about which lawyers might reasonably and honestly differ in their opinions, yet the attitude of the company in denying liability must not be vexatious and recalcitrant, else it may not be exculpated from the charge of willful obstruction. [Exchange Bank of Novinger v. Turner (Mo. Sup.), 14 S. W. (2d) 425.]

In this instance the evidence that we have set out was amply sufficient in our view of it to have warranted the court in finding that the company's attitude was willful and vexatious; and conceding that there were issues which the company might very well have been justified in litigating, their neglect and refusal to deal with plaintiffs in the adjustment of the loss after they were apprised of all the facts, whether it would have been to admit or to deny liability, was clearly evidence of unjustifiable and vexatious delay.

Accordingly, the Commissioner recommends that the judgment of the circuit court be affirmed.

PER CURIAM:—The foregoing opinion of BENNICK, C., is adopted as the opinion of the court. The judgment of the circuit court is, accordingly, affirmed. *Haid, P. J.,* and *Becker* and *Nipper, JJ.,* concur.