**A. H. DRUMMOND, Administrator of the Estate of Edwin Metcalf, Deceased, Respondent,**

**v.**

**HARTFORD FIRE INSURANCE COMPANY, Inc., Appellant.**

No. 23225.

Kansas City Court of Appeals. Missouri.

Dec. 5, 1960.

Russell N. Pickett, Eugene E. Andereck, Phil Hauck, Pickett, Andereck & Hauck, Trenton, for appellant.

R. Leroy Miller, Trenton, William Y. Frick, Unionville, for respondent.

MAUGHMER, Commissioner.

In June, 1957, defendant company issued its five year Standard Fire Insurance Policy for Missouri in the amount of $2,500 to one Edwin Metcalf covering a one and one-half story farm dwelling house located in Grundy County, Missouri. On September 9, 1958, the building was destroyed by fire of unknown origin. The company denied liability. This suit was brought by the insured's administrator. The verdict and judgment were for plaintiff in the amount of $2,500 and defendant company has appealed.

There is no dispute as to the issuance of the policy, payment of premiums and proof showing total loss by fire of the dwelling house. The defense bottomed its claim of no liability upon the following policy provision: "Unless otherwise provided in writing added hereto this company shall not be liable for loss occurring * * * (b) while a described building, whether intended for occupancy by owner or tenant, is vacant or unoccupied beyond a period of sixty consecutive days; * * *".

Three assignments of error are presented on appeal: (1) Defendant's motion for directed verdict ought to have been sustained. (2) It was error to exclude the testimony of one Ronald Abrahamson, and (3) The Court erred in giving Instruction No. 2.

If defendant is entitled to a directed verdict it must be by reason of the quoted exemption clause which avoids liability if the described building "is vacant or unoccupied beyond a period of sixty consecutive days". This stipulation in the contract is one that the parties might lawfully make and effect must be given to it. However, in construing its meaning and determining its effect, we must not enlarge the meaning, but rather construe strictly, and if the words or phrase used is of doubtful import, give that construction which is most favorable to the policyholder. Norman v. Missouri Town Mut. Fire, etc., Ins. Co., 74 Mo.App. 456, and Florea v. Iowa State Ins. Co., 225 Mo.App. 49, 32 S.W.2d 111, 113. The burden of proof to establish the breach relied upon is always upon the insurer. Hoover v. Mercantile Town Mutual Ins. Co., 93 Mo.App. 111, 115, 69 S.W. 42; Walton v. Phoenix Ins. Co., 162 Mo.App. 316, 141 S.W. 1138, 1142. And, of course, if plaintiff's judgment is supported by substantial and admissible evidence, it must be affirmed.

The property owner and insured, Mr. Edwin Metcalf, died at the age of 82 years, soon after the property loss, but before the trial. His son Charles Metcalf testified that during the 1957 farm year and when the policy was issued, he and his wife "farmed the farm and lived in the house"; that in the fall of 1957, they moved to Trenton, but left a stove, bed, mattress, table, chairs and sufficient furniture so they could stay over night. He said that he went back to the farm "sometimes once or twice a week and sometimes every day"; that he went there as caretaker and to see how the crops were getting along. He declared that during the summer months before the fire he stayed over night at least once each

week, that sometimes his wife went along, meals were cooked and they slept upstairs. They picked and canned fruit and berries, the yard was not mowed and their mail was delivered to their home in Trenton.

The defendant presented evidence from four neighbors to the effect that during 1958 the yard was unmowed, grew up in weeds, no chickens or cows were kept on the premises and that no one "lived in the house" after 1957.

 The term "vacant" is generally construed to mean empty and without inanimate objects. It implies entire abandonment, nonoccupancy for any purpose. 45 C.J.S. Insurance ·§ 556, p. 303; 29A Am. Jur., Insurance, p. 112; Webster's Unabridged Dictionary. Considering plaintiffs' evidence we have no difficulty in concluding the building was not "vacant" within the meaning of the policy at the time of the fire, or at any time. This court so held in the rather old, but many times cited case of Norman v. Missouri Town Mut. Fire, etc., Ins. Co., 74 Mo.App. 456, 460.

The exclusion clause "unoccupied beyond a period of sixty consecutive days" presents a closer question. Appleman, Insurance Law & Practice, Vol. 4, page 757, gives us this general definition: "In general, the term occupancy refers to the use of the property by human beings as their customary and usual place of habitation, and who, when absent temporarily, contemplate returning thereto as their place of abode". However, in 45 C.J.S. Insurance § 556, pages 303–304 it is stated: "The occupancy need not be of a permanent character, and a mere temporary sojourn on insured premises will suffice; * * *".

The courts have been required to construe different exclusion provisos as the exemption clauses are not always written exactly alike. Sometimes it has been only vacancy, again unoccupied for a certain number of days and on occasion "unless occupied as a dwelling house". Insurance companies may write these exclusion clauses to express whatever coverage is contemplated and intended.

In Florea v. Iowa State Ins. Co., 225 Mo.App. 49, 32 S.W.2d 111, 114, the defense was that the building became unoccupied and so remained for a period of ten days before the fire. The tenant's wife and children had left the farm home permanently. The husband had his meals and slept at the home of his wife's parents save one night only eight days before the fire. Some furniture remained in the building. The court affirmed a judgment for plaintiff under these facts and said: "Thus we find the rule to be that, where there is no condition or stipulation in the policy whereby the insured obligates himself either to limit or to extend his occupancy to any particular purpose, then any occupancy will suffice which satisfies the letter of the condition of the policy, even though it may be by one who is there possessio pedis, such as a caretaker or watchman, not having the house as his domicile. (citing cases).

\* \* \* \* \* \*

"It is also of significance that the policy only required that the premises be not unoccupied for a period of more than ten days, without in anywise undertaking to specify the character of the occupancy, other than that it might be by either the owner or his tenant. The proof is clear that the tenant was in charge of the premises even up to the time of the fire, and that he was continually exercising all the prerogatives which went along with his right to occupy the house. Whether he was inside of it every day does not appear, but he was at least in control of it. Under these circumstances, we think it was *for* the court, as *the trier of the facts*, to say whether the building described in the policy became unoccupied and remained so for ten days before the occurrence of the loss; and, with substantial evidence to support the finding made, the point is not available to defendant as a ground for the reversal of the judgment". (Italics ours.)

In Walton v. Phoenix Ins. Co., 162 Mo. App. 316, 141 S.W. 1138, 1141, 1142, the

court reached the same result under a similar state of facts and exclusion clause, saying: "It is said in many cases, that one who sleeps in a house may be said to occupy it: but no case to which we are referred or which we have found holds that, as a matter of law, sleeping in a house is essential to occupancy. When not a place of abode of man it is said by some authorities to be unoccupied. But this is a very general definition. *One may occupy premises and yet those premises may not be his place of abode. One is in occupancy of a place when he is there possessio pedis.* The person occupying may be a caretaker, a watchman, not having the house as his domicile. Still the house is occupied." (Italics added.) This interpretation and the Florea case specifically were recently approved in Deal & Co. v. Kuhlmann, Mo. App., 244 S.W.2d 390, 393, by this language: "We stated in Florea v. Iowa State Ins. Co., 225 Mo.App. 49, 32 S.W.2d 111, loc. cit. 114, that in such cases 'the term "occupancy" refers to human habitation, and means the act of living in a particular house,' but we went on to say that the term did not limit the insured's occupancy to any particular purpose and that the terms of the policy might be satisfied where one 'is there possessio pedis, such as a caretaker or watchman' ".

In its Instruction No. 2, asserted by defendant to be erroneous, the Court told the jury that the word "occupied" "does not necessarily mean the actual presence of human beings, but also means occupancy for a purpose, such as by one who is there as a caretaker or watchman, not having the house as his regular living quarters". Instruction No. 1 required a finding that the dwelling was occupied according to the terms and meaning of the policy. The Court also gave Instructions B and C, as suggested by defendant. Each told the jury that if the dwelling was "vacant and unoccupied" beyond a period of sixty days prior to the loss, plaintiff could not recover. In addition, Instruction C declared that "vacant and unoccupied"

means to be without any person living in the dwelling and the mere supervision over the dwelling does not constitute occupation of it.

In Walton v. Phoenix Ins. Co., supra, the Court ruled that instructing the jury in the exact phraseology of the policy, that is, "vacant and unoccupied" was proper instruction. The Court in our case did just that and then elaborated further. For defendant, it told the jury that mere supervision of the building does not constitute occupancy, and for plaintiff, said that occupancy for a purpose, such as a caretaker or watchman, is sufficient.

We have read the cases cited by appellant on this point, including Cook v. Continental Insurance Co., 70 Mo. 610, upon which it seems to rely chiefly. In the Cook case the exclusion was that the policy became void if the building became unoccupied (for any length of time). The facts showed the whole family had abandoned the premises and that the person requested to sleep there had left permanently. The Cook case is neither fully applicable nor controlling as to our case.

Under the holdings in the Deal & Co. and Florea cases, supra, that the terms of such a policy might be satisfied when one "is there possessio pedis, such as a caretaker or watchman", we are unwilling to hold that the instructions given constituted reversible error. We rule further that defendant was not entitled to a directed verdict and the case made was a submissible one.

Defendant's third point grows out of its unsuccessful attempt to get into evidence, certain questions and answers contained in the deposition of Edwin Metcalf, the insured, and original plaintiff in this lawsuit. This deposition was taken before Ronald Abrahamson, court reporter. It was never signed or read by the deponent and he never had an opportunity to correct, change or modify his answers. All this is so for the very sufficient reason that Mr.

Metcalf died before the testimony was transcribed. At the trial defendant first offered (and read into the record) certain specific questions and answers contained in the deposition. This offer was refused. Defendant then offered to prove the same questions and answers as statements against interest, through the medium of oral testimony by Abrahamson, court reporter. This offer, likewise, was refused. In its motion for new trial defendant charged that the refusal of each offer constituted error. On appeal the only assignment respecting this proffered testimony is that the Court erred in excluding the testimony of Abrahamson.

Section 492.340, V.A.M.S., part of our new Code of Civil Procedure, concerning depositions, reads: "When the testimony is fully transcribed the deposition shall be submitted to the witness for examination and shall be read to or by him, unless such examination and reading are waived by the witness and by the parties. Any change in form or substance which the witness desires to make shall be entered upon the deposition by the officer with a statement of the reasons given by the witness for making them. The deposition shall then be signed by the witness, unless the parties by stipulation waive the signing or the witness is ill or cannot be found, or *is dead* or refuses to sign. If the deposition is not signed by the witness, the officer shall sign it and state on the record the fact of the waiver or of the illness, or death or absence of the witness or the fact of the refusal to sign together with the reason, if any, given therefor; and the deposition may then be used as fully as though signed, unless on a motion to suppress the court holds that the reasons given for the refusal to sign requires rejection of the deposition in whole or in part". (Italics supplied.)

In Capra v. Phillips Investment Co., 302 S.W.2d 924, 932, 933, our Supreme Court en banc. considered this question and held:

"Cases prior to the enactment of § 492.-340 hold a deponent has the right to correct his answers before signing his deposition, Gosney v. May Lumber & C. Co., 352 Mo. 693, 179 S.W.2d 51, 53, (5), and that a deposition is not the witness' deposition until signed, Davis v. Otto, Mo.App., 206 S.W. 409, 410(6–8). Under these cases the changed answers and not the original answers were the witness' deposition.

\* \* \* \* \* \*

"Unless the deposition be suppressed in whole or in part, we conclude § 492.340 contemplates that when a witness is sworn to testify to the truth, as here, his original answers, as well as his changed answers, with his reasons, if any, therefor, upon his renewed oath constitute his deposition".

We believe that Section 492.340 effected changes for the taking and admission of depositions in evidence. After providing for the witness making any changes he desires and his signing, unless for stated reasons (including death) the section provides: " \* \* \* and the deposition may then be used as fully as though signed, unless on a motion to suppress the court holds that the reasons given for the refusal to sign requires rejection of the deposition in whole or in part". No motion to suppress was filed of record. We believe that under this section and considering the death of the witness, that his deposition, in whole or in part, is admissible under either offer made by defendant.

Even though we are constrained to hold and do hold it was error under these circumstances to exclude that part of the plaintiff's deposition offered by defendant, we are further convinced that the error was not prejudicial. We are admonished by Section 512.160, subd. 2, V.A.M.S. not to reverse a judgment unless we find error materially affecting the merits. See also Shepherd v. Woodson, Mo., 328 S.W.2d 1–9. In its brief defendant asserts that this excluded testimony "impeached plaintiff's case in chief, impeached the testimony of his son Charles Metcalf", and pointed out that the answers stated " \* \* \* in 1957,

Charles Metcalf moved out from the farm; that the farm was not thereafter rented; that nobody lived in the house after the son moved, and that the father did not go down to the farm with his son during the summer before the fire".

We think that substantially the same evidence was given in the testimony of the son Charles Metcalf, who specifically stated (1) that in the fall of 1957, he and his wife moved from the farm to Trenton; (2) the ground, but not the house was thereafter rented—nobody else moved into the house; (3) We are not contending that somebody else lived there, and (4) "My father was 82, very feeble—could scarcely walk and hasn't driven a car for years".

This son, Charles Metcalf, was the plaintiff's only witness who gave any direct evidence as to the facts touching the occupancy question for the year 1958. We have read his testimony fully and carefully and we think it was factually in accord with the deposition answers of his father as offered by defendant. Furthermore, his evidence covered the field explored by defendant with the father and the answers were strikingly similar—where the words were slightly different, the substance was the same. In fact plaintiff offered no evidence otherwise.

In Boring v. Kansas City Life Insurance Co., Mo., 274 S.W.2d 233, 239, our Supreme Court quoted with approval the following: " 'It is * * * well settled that, if in a specific instance the evidence should not have been excluded, the error is harmless if the same evidence is found in the testimony of the same or other witnesses, given before or after the objection was sustained.' Steffen v. Southwestern Bell Telephone Co., 331 Mo. 574, 56 S.W.2d 47, 48(1–3). See also Tatum v. Gulf, M. & O. R. Co., 359 Mo. 709, 223 S.W.2d 418, 424(6); Sandler v. Schmidt, Mo.Sup., 263 S.W.2d 35, 40(8)". It is our conclusion that rejection of this evidence was not prejudicial, did not materially affect the merits and should not lead to a reversal.

The defendant having presented no further assignments and no reversible error appearing, the judgment is affirmed.

SPERRY, C., concurs.

PER CURIAM.

The foregoing opinion of MAUGHMER, C., is adopted as the opinion of the Court.

All concur.