**Ollie GRAVES and Lola Graves, Plaintiffs-Respondents,**

v.

**M. F. A. MUTUAL INSURANCE COMPANY, Defendant-Appellant.**

**No. 33180.**

St. Louis Court of Appeals.

Missouri.

Sept. 16, 1969.

---

8. For contract provisions, see 69 N.J.Super. 94, 173 A.2d 536, 537–538.

Howard F. Major, Hampton Ford, Columbia, Van Matre & Van Matre, Mexico, for defendant-appellant.

Barnes & Barnes, Latney Barnes, Mexico, for plaintiffs-respondents.

WOLFE, Presiding Judge.

This is an action on a policy of fire insurance issued by the defendant to the plaintiffs. It insured the plaintiffs' house for $3,500 and their household goods and personal effects for $1,500. The insureds' house and its contents were totally destroyed by fire on August 21, 1963. The plaintiffs sued for $5,000, the face amount of the policy. The insurer paid $2,541.55 to a mortgagee in satisfaction of its interest in the policy. The trial resulted in a plaintiffs' verdict and judgment for the balance in the sum of $2,458.45, and defendant appeals.

Two defenses were asserted by the defendant. One was predicated on a provision of the policy which is as follows:

*"Conditions suspending or restricting insurance. Unless otherwise provided in writing added hereto this Company shall not be liable for loss occurring* ?

(a) while the hazard is increased by any means within the control or knowledge of the insured; or

(b) while a described building, whether intended for occupancy by owner or tenant, is vacant or unoccupied beyond a period of sixty consecutive days; * *."

The defendant contended that the house had been vacant or unoccupied beyond a period of sixty consecutive days.

The second defense pleaded was that the fire that destroyed the building " * * * was intentionally and deliberately set by plaintiffs for the purpose of destroying the

house and contents mentioned and for the purpose of collecting from defendant proceeds under the policy mentioned and by reason of such fraudulent action on the part of plaintiffs said plaintiffs are not entitled to any recovery under their petition."

The only points raised here, assert as error, the refusal by the trial court to give some instructions offered by the defendant and the giving of one instruction offered by the plaintiffs.

The plaintiffs, who are husband and wife, owned a one-story frame house in Madisonville, a small town in Missouri. They had purchased it over a year before the fire. About the time of the purchase of the house they obtained the fire insurance policy from the defendant. They lived in the house by themselves and they had put a roof on the porch and added a bathroom. They decided to sell the house in 1963 and with that intention in mind they bought a trailer to live in. They had the trailer moved to a trailer lot at Vandalia the latter part of May but did not move into it until sometime in June.

They left all of their belongings in the house at Madisonville except for some bedding, pots, pans, a small space heater and a rocking chair. When they left the house the electricity was turned off and the phone was disconnected.

After moving to the trailer they went back to the house once or twice a week. Mr. Graves cut the grass. The house was situated on three lots. Each lot was 60 x 120 feet in area. Mrs. Graves had some house plants or flowers in the house and she took care of these and dusted.

On two occasions they spent the night in the house, once in July and once in August. They did not intend to do so at the time they went there. Once the top blew off the carburetor of Graves' power lawn mower. He could not find it so they stayed overnight and he fashioned a new top out of a tin can. On the other occasion his car would not start, so they again spent the

night in their house. They ate and cooked some meat on a small wood burning stove on some of their returns to the house. They also had canned goods, winter clothing and bedding there.

On the morning of August 21, Mr. and Mrs. Graves drove to their house from their trailer to take a box of empty fruit jars which they wanted to leave in a smokehouse which was to the rear of their house in Madisonville. They parked the car in the driveway and Graves took the box of jars and put them in the smokehouse. He then went to the downspout that led from the eaves of the roof to what he called the "well." He shut off the direction of its flow so that the well would not run over. He then went back to the automobile where his wife was waiting and they left. He did not go in the house which was locked up and the keys were with his wife in the car. As they left, his wife said she smelled rubber burning, but he thought it might be the car or someone burning a rubber tire. They drove to a town where their daughter lived which was a short distance away. There they went to a drugstore to buy some medicine and to a food locker for some meat. They then went to their daughter's house and learned there that their house which they had left a short time before was on fire. They drove back to their house but by the time they got there it had burned to the ground.

The defendant called as witnesses three persons who lived near the Graves' house. One testified that between 9:00 and 10:00 A.M. he saw black smoke coming from the eaves. Another said that about half an hour after Graves left he saw smoke coming from under the eaves and the third said she saw the smoke forty minutes after Graves drove away.

Graves' income consisted of $72.40 a month from social security. In addition to this he had an old age pension and made a little money off of hogs and calves. He owned another house in Madisonville. It was a three-room brick house near the one

that burned. He owed about $3,000 on the trailer that he was living in and had planned to pay it off when he sold his house. He also owed $1,400 to a building and loan association, and $300 or $400 to another company, and around $1,000 in medical bills.

The claims representative of the defendant insurer testified on behalf of the defendant. He stated that the day after the fire he talked to Graves and recorded their conversation. It varied in only one material respect from the testimony Graves gave in court. Graves stated that he had not stayed in the house overnight since he moved to the trailer. Graves testified in explanation of this that both he and his wife were upset the day after the fire because of the fire but they had in fact both spent two nights in the house as he had previously testified. The claims representative who had investigated the fire stated that he found no evidence of arson. There was no evidence as to what started the fire.

■ The instructions offered by the defendant which the defendant claims that the court erroneously refused were designated as No. 8, No. 9, and No. 10. The plaintiff offered and the court gave the following instruction, designated as No. 3:

"Your verdict must be for the plaintiffs unless you believe the house was vacant or unoccupied beyond a period of sixty consecutive days prior to the fire."

Both Instructions 8 and 9 tendered by the defendant and refused by the court contained the following paragraph:

"The word 'unoccupied' as used in this instruction means the lack of presence of a human being or human beings in the house as their customary place of abode, not absolutely and uninterruptedly continuous, but it must be the place of usual return and habitual stoppage. Supervision over the house does not constitute occupation of it."

■ The policy provisions set out above merely used the words "vacant or unoccupied beyond a period of sixty consecutive days." The courts do not enlarge the terms of insurance policies to defeat recovery. On the contrary, that construction is adopted which is most favorable to the insured. Walton v. Phoenix Insurance Company, 162 Mo.App. 316, 141 S.W. 1138, 1.c. 1142. We considered a similar factual situation in Florea v. Iowa State Ins. Co., 225 Mo. App. 49, 32 S.W.2d 111. There a tenant had prepared to move from the premises. His wife and children had left the home permanently. The husband slept at the home of his wife's parents except for one night eight days before the fire. Upon those facts we stated, 1.c. 114:

"* * * Thus we find the rule to be that, where there is no condition or stipulation in the policy whereby the insured obligates himself either to limit or to extend his occupancy to any particular purpose, then any occupancy will suffice which satisfies the letter of the condition of the policy, even though it may be by one who is there possessio pedis, such as a caretaker or watchman, not having the house as his domicile. * * *.

*    *    *    *    *    *

"It is also of significance that the policy only required that the premises be not unoccupied for a period of more than ten days, without in anywise undertaking to specify the character of the occupancy, other than that it might be by either the owner or his tenant. The proof is clear that the tenant was in charge of the premises even up to the time of the fire, and that he was continually exercising all the prerogatives which went along with his right to occupy the house. Whether he was inside of it every day does not appear, but he was at least in control of it. Under these circumstances, we think it was for the court, as the trier of the facts, to say whether the building de-

scribed in the policy became unoccupied and remained so for ten days before the occurrence of the loss; and, with substantial evidence to support the finding made, the point is not available to defendant as a ground for the reversal of the judgment."

We hold that the court properly refused the instructions proffered containing the definition of "unoccupied." If the insurance company wanted a more restrictive clause than that expressed in the policy the policy should have been so phrased. Drummond v. Hartford Fire Insurance Company, Mo.App., 343 S.W.2d 84; Limbaugh v. Columbia Insurance Co. of New York, Mo.App., 368 S.W.2d 921.

◼ As to defendant's offered Instruction No. 10, which was refused, it directed a verdict for the defendant if "plaintiffs intentionally and deliberately set the house on fire and caused it to burn for the purpose of collecting proceeds from defendant under the insurance policy." There was no evidence to support this instruction. The mere fact that plaintiffs were deeply in debt certainly was not sufficient to support an inference that the fire was set by them. This point also is without merit.

◼ The other point raised is that Instruction No. 3 should not have been given because it contained the words "vacant or unoccupied." It is asserted here that the word "vacant" should have been omitted because there was no contention upon trial that the house was vacant. The defendant's answer stated that the house was "vacant or unoccupied." The exclusion clause of the insurance policy was read in its entirety to the jury by defendant's counsel. We find that the instruction was properly given.

Judgment affirmed.

BRADY and DOWD, JJ., concur.