MARTHA HUNT, Respondent, *v*. MISSOURI RAILROAD COMPANY ET AL., Appellants.

June 12, 1883.

1. PRACTICE—SEPARATE TRIALS.—An exercise of discretion by the trial court, in refusing separate trials of joint defendants, in a civil action, will not be reviewed on appeal, unless it clearly appears that the discretion was abused.

2. —— CUMULATIVE CHALLENGES OF JURORS.—Concurrent acts of negligence by several defendants tending to a common result injurious to the plaintiff, do not constitute several causes of action, and do not entitle such defendants to separate trials, or to cumulative rights of peremptory challenge.

3. DAMAGES — SEVERAL ACTS OF NEGLIGENCE BY SEVERAL DEFENDANTS. — Where a. building contractor negligently suspends the guy rope of a derrick too low for a street car to pass under it and the driver of the car negligently drives against the rope so as to cause the derrick to fall upon and kill a passenger on the car, both the contractor and the railway corporation may be held liable in an action by the widow of the deceased passenger.

4. CONTRIBUTORY NEGLIGENCE. — In the absence of any regulation forbidding passengers to ride on the platform of a street car, contributory negligence can not be imputed to a passenger from the fact of his being injured while so riding on the platform.

5. NEGLIGENCE — PROOF OF. — Though all the witnesses may testify that there was no negligence on the part of the defendant, the jury may nevertheless find that there was negligence, if the physical facts of the case and the manner of the injury raise a necessary inference to that effect.

APPEAL from the St. Louis Circuit Court, BOYLE, J. *Affirmed.*

DYER, LEE & ELLIS, for the appellants : There is no presumption of negligence against a common carrier by reason of the fact that a passenger is injured on its conveyances. — *Yerkes* v. *Packet Co.,* 7 Mo. App. 267. When the facts as to negligence are clear and undisputed, the court should declare to the jury the inference to be drawn from the facts. — *Bell* v. *Railroad Co.,* 72 Mo. 41, 58.

JOHN WICKHAM, for appellant Higgins: The court erred in refusing appellant Higgins a separate trial. — Rev. Stats., sect. 3603 ; *Spaulding* v. *Suss,* 4 Mo. App. 551 ; *Colgrove* v. *Railroad Co.,* 6 Duer, 430. The court erred in overruling appellant Higgins' objection to the introduction of any testimony against him under the petition which fails to state any concurrent negligence rendering both defendants liable.— 2 Redf. on Rys. (5th ed.) 248, and note 10. The court erred in taking the question of contributory negligence, which is one of fact, from the jury by instructing them, on behalf of the respondent, that there was no evidence in the case of any contributory negligence on the part of George B. Hunt directly con-

tributing to his death. — *Barnes* v. *Bellefontaine R. Co.*, 50 Mo. 140; *Smith* v. *Union R. Co.*, 61 Mo. 591; *Hulsenkamp* v. *Citizens' R. Co.*, 37 Mo. 553, 554; *s. c.* 34 Mo. 54; *Beers* v. *Housatonic R. Co.*, 19 Conn. 57; *Clark* v. *Eighth Av. R. Co.*, 36 N. Y. 135; Thompson on Car. Pass. 444 *et seq.* The court erred in refusing to instruct the jury that if they found there was any want of care on the part of the deceased, Geo. B. Hunt, or on the part of the car driver, which contributed directly to the injury which caused the death of said Hunt, they should find for appellant Higgins. It was error in the court to hold the appellant Higgins liable for the neglect of the car driver, which was the active cause of the injury. — *Thorogood* v. *Bryan*, 8 C. B. 115; *Brown* v. *N. Y. Central R. Co.* 31 Barb. 385; *s. c.* 32 N. Y. 577, 602; *Mooney* v. *Hudson River R. Co.*, 5 Robt. 553; *Lake Shore R. Co.* v. *Miller et al.*, 25 Mich. 277; *Lockhart* v. *Lichtenthaler*, 46 Pa. St. 164.

W. C. Jones and A. R. Taylor, for the respondent: The granting of separate trials to defendants is within the discretion of the trial court. — Rev. Stats., sect. 3603. Higgins was guilty of negligence in suspending a rope across a street, where cars were passing, so low to the ground as not to let the cars pass. And the negligence of each defendant continued up to the moment of the fall of the derrick and the killing of the man. This made the defendants jointly and severally liable. — 2 Thompson on Neg. 1088; *Colgrove* v. *Railroad Co.*, 6 Deur, 430; Thompson on Car. 284, 289; *Bennett* v. *Railroad Co.*, 36 N. J. 225; *Rider* v. *Freeman*, 50 N. H. 420; *Barrett* v. *Railroad Co.*, 45 N. Y. 628; *The State* v. *Miseream*, 64 N. Y. 138; *Chapman* v. *Railroad Co.*, 19 N. Y. 341.

Lewis, P. J., delivered the opinion of the court.

The plaintiff sues under sections 2121 and 2122 of the Revised Statutes, for damages sustained in the killing of her

husband, while he was riding on a street car of the defend-
ant corporation. There was a jury verdict for $5,000 in
favor of the plaintiff and judgment accordingly against both
the defendants.

The testimony tended to show that defendant Higgins was
a contractor for reconstructing the " Dorris Row " of build-
ings, on the north side of Olive Street in the city of St.
Louis. He used in his work a movable derrick, about thirty-
eight feet in height, which was placed on the sidewalk and
leaned toward the building, from five to seven feet from
the perpendicular. It was secured in position by two guy
ropes, about eighty-seven feet apart at the lower ends which
extended from the top of the derrick to the other side of
the street, and were there tied to upright posts, at the
height of six or eight feet from the ground. These guys
were, in fact, one continuous rope, passing through pulleys
at the top of the derrick. There was also a rope which held
the top of the derrick towards the building. This was tied
to an upright piece of scantling, within an upper story,
which was nailed at the top and bottom to the joist and the
floor, and was otherwise reinforced by secured bits of
scantling. Some ten or fifteen minutes before the accident
hereinafter mentioned, the derrick was moved about two
feet westward, and the west guy rope which, until then, had
been fastened at a point forty feet from the other, was
moved and tied to a post forty-seven feet further west.
There was a good deal of testimony tending to show that
the workmen, in making these adjustments, used much care
in providing against a possible contact of the ropes with pass-
ing street cars. The plaintiff's husband, a passenger, was
standing upon the rear platform of car No. 93 of the defend-
ant railroad company, going east. It appears that the
west guy rope was caught by a corner of the ventilator, or
cupola, on top of the car, with the effect of pulling the der-
rick over, so that it tore away the scantling to which the
inner stay rope was fastened, and, falling upon the rear

platform of the passing car, killed the plaintiff's husband. There was testimony tending to show that, a few minutes before the accident, and after the new adjustment of the derrick and ropes, a car, whose height exceeded that of No. 93, had passed along in the same direction, without any mishap, and that this occurrence was in view of the driver of No 93. The derrick had been in use at that place for several months before, and was similarly used for a long time after the catastrophe, without any interference with the passing cars.

A special panel of eighteen jurors was summoned, on the application of the defendant corporation. When the case was called for trial, each defendant formally demanded a separate trial, which was in each instance refused by the court. Each defendant claimed a right of peremptory challenge of three jurors. These claims were also denied.

Our statute (Rev. Stats., sect. 3603) provides that where there are several causes of action united in a petition, or where there are several issues, and the court shall be of opinion that all or any of them should be tried separately by the court or jury, it may, on the application of either party, direct separate trials. The question is clearly left to the sound discretion of the court, whose action therein can not properly be reviewed on appeal, unless it plainly appears that the discretion has been abused. We can not perceive that there has been any such abuse in the present instance. Nor do we discover that any fair reason existed for the increased expense, delay, and inconvenience of a separate trial for each defendant. There was a single cause of action, to wit: that the plaintiff had been deprived of her husband, and his life, through the negligence of the defendants. The issue to be tried was, whether the defendants (or either of them) were guilty of a negligence which caused the death. Neither the cause of action nor the issue was duplicated by the fact that the negligence may have appeared in two or more forms. If two men, one

with a club and the other with a dagger, assault and wound a third person, every blow with the club is a wrong committed by the man who wields it, separate from and independent of the dagger thrusts inflicted by the other, and *vice versa*. Yet no one will deny that both may very properly be sued or prosecuted and tried together for the common injury. The theory upon which the plaintiff here sued and recovered was that the acts of negligence which caused the death were not merely concurrent, but co-operative and interdependent, as between the two defendants and the doings of each. Thus, the supposed negligence on the part of defendant Higgins, in leaving the guy rope too low, or in insufficiently mooring by the stay rope and scantling within the building, would have been harmless but for the negligence of the car driver in driving against the guy, instead of stopping when he reached it. On the other hand, no amount of reckless and rapid driving would have done injury without the co-operative negligence which misplaced the guy rope and left the stay rope fastening too weak to withstand the shock of the car running against the guy. Certain it is that the acts or omissions of both defendants, whether negligent or not, were necessary to effect the injury for which the plaintiff sues. There is no legitimate antagonism between the several defences, as counsel seem to suppose. If there was negligence on the part of one of the defendants, this fact would make it neither more nor less true that there was negligence, or a total absence thereof, on the part of the other. If one defendant could show such prudent care and management as would disprove every imputation of negligence, his defence would be complete, whatever might be the success or failure of his codefendant in the same regard. The most that one defendant could hope for from impeaching the conduct of the other, would be the sharing of their responsibility upon a verdict against both. But this could not be anticipated unless both were in fault.

Again: if the defendant contractor and the defendant corporation had agreed together beforehand that the one should misplace the guy and the other should drive against it in order to produce harm, there could be no question of their joint liability for the consequences. Why, then, should there be any when their concurrent actions imply concurrent negligence, whose common tendency is to produce a single injurious result? Both the setting of the trap, and the springing of it at the right moment, were necessary to the fatal capture. There was no error in the refusal of separate trials; and this being true, it follows naturally that there could be no separate and cumulative rights of peremptory challenge.

We can not better present our views of the law applicable to this case, than by here copying the instructions which were given by the trial court. They cover the whole case, and are, in our view, entirely unexceptionable. If we are correct about this, the defendant's demurrer to the evidence was properly overruled, since there was substantial evidence tending to establish every hypothesis of fact in the plaintiff's favor. The instructions leave nothing for argument except upon the weight of the testimony, with which we have nothing to do. The court instructed for the plaintiff thus: —

1. "The court instructs the jury, that if they believe from the evidence in this case that plaintiff was the lawful wife of George B. Hunt at the time of his death, as herein stated, and that the defendant is and was a corporation and common carrier of passengers at the time herein stated, and owned and operated the street railway and car herein mentioned; and if the jury believe from the evidence, that on the twenty-third day of May, 1881, the defendant Missouri Railroad Company received said George B. Hunt upon one of its cars to be carried as a passenger east, along Olive Street, and that whilst said George B. Hunt was by said Missouri Railroad Company being carried, as such passenger, on its car, east along Olive Street, at a place between

Eleventh and Twelfth Streets, in the city of St. Louis, a heavy timber, known as a derrick, fell upon said George B. Hunt and killed him; and if the jury believe from the evidence that said derrick was standing upon the north side of Olive Street, and was supported by a rope or ropes suspended across Olive Street, and if the jury believe from the evidence that said rope or ropes, so suspended across Olive Street, were not sufficiently high from the ground to enable the street car in which said George B. Hunt was being carried as such passenger to pass under without striking against said rope; and if the jury believe from the evidence that the servants of defendant Missouri Railroad Company, in charge of said car, drove said car against said rope so supporting said derrick with such force as to cause said derrick to fall; and if the jury believe from the evidence that defendant Missouri Railroad Company did not use due care in so driving said car against said rope and causing said derrick to so fall, then the plaintiff is entitled to recover against the Missouri Railroad Company.

2. "And if the jury further believe from the evidence that the defendant Higgins, by his employes, had suspended said rope or ropes attached to said derrick across Olive Street, so near to the ground that said car in which said George B. Hunt was being carried as such passenger could not pass under said rope without striking it, and that said Higgins or his employes were negligent in so causing said rope to be so suspended across said street, and that said rope being so suspended across said street contributed directly to cause said car to strike against it and throw said derrick down as aforesaid, then the defendant Higgins is liable in this action, and plaintiff is entitled to recover against both defendants such damages as the jury may deem fair and just, with reference to the necessary injury resulting to plaintiff from the death of her husband; but the verdict cannot exceed five thousand dollars.

3. "The court instructs the jury that there is no evidence in this case of any contributory negligence upon the part of George B. Hunt, the deceased, directly contributing to his own death."

Of its own motion the court instructed as follows: —

4. "The jury are instructed that in the erection and use of the derrick, and in placing the ropes thereto attached, it was the duty of defendant Higgins to exercise such diligence and caution as prudent persons would have exercised under similar circumstances, in order to prevent persons or vehicles passing upon the street from being injured by such derrick or ropes ; and the failure of said defendant or of his employes to exercise such diligence or caution would constitute negligence on his part. And if the jury believe said defendant was guilty of negligence, as thus defined, and that such negligence directly contributed to cause the said derrick to fall on and kill the plaintiff's husband, then plaintiff is entitled to recover against said defendant Higgins.

5. "The court instructs the jury that if they believe from the evidence that the defendant, the Missouri Railroad Company, received George B. Hunt upon its car as a passenger, then it was the duty of said company and its employes in charge of said car, in carrying said Hunt as such passenger, to use all the care, diligence, and foresight which careful and prudent persons engaged in such carriage of passengers could reasonably exercise under similar circumstances, in order to prevent injury to said Hunt while riding on said car. And if the jury believe from the evidence that said defendant company or its employes, while carrying said George B. Hunt as such passenger, failed to exercise such care, diligence and foresight, the failure so to do would constitute negligence on the part of said company. And if the jury find from the evidence that the said defendant company was guilty of negligence, as thus defined, and that such negligence directly contributed to cause the derrick to fall upon and

kill the said Hunt, the plaintiff is entitled to recover against said defendant, the Missouri Railroad Company.

6. " Unless the jury find that the fall of the derrick was occasioned by the negligence either of one or both of the defendants the plaintiff is not entitled to recover, and the jury should find in favor of the defendants. If, however, the jury believe from the evidence that both of the defendants were guilty of negligence which directly contributed to cause the fall of the derrick then they should find against both defendants ; and if they believe from the evidence that the fall of the derrick was caused by the negligence of one defendant only, then their verdict should be against such defendant, and in favor of the other defendant."

In behalf of the defendant company the court instructed : —

7. " That the railroad company is not the insurer of the lives or safety of the passengers in its cars. And if the jury find from the evidence that, at the time the injury in question occurred, the employes of the defendant railroad company having charge of the car on which deceased was a passenger, were using such care, diligence and foresight as careful and prudent men could reasonably be expected to exercise in the discharge of the duties of their particular employment under the same circumstances, then the jury should find in favor of said defendant railroad company.

8. " The court instructed the jury that as against the Missouri Railroad Company the burden of proof is upon the plaintiff to show that the death of George B. Hunt was occasioned by the fault or negligence of the conductor or driver of the car in question.

9. " The jury are instructed by the court, that if they shall find and believe from the evidence that the derrick in use by the defendant Higgins fell upon the car of the defendant company and thereby caused the death of plaintiff's husband, and that the falling of said derrick was not caused by the negligence of the defendant company, then the plaintiff can not recover against said railroad company."

For defendant Higgins the following instructions were given : —

10. " The jury are instructed that the burden of proof of negligence rests on the plaintiff; and unless they are satisfied from the evidence that the defendant Higgins or his employes were guilty of negligence which contributed directly to cause the accident which resulted in the death of George B. Hunt, they must find for the defendant Higgins.

11. " If the jury find from the evidence that the car in question was driven rapidly, that the rate of speed at which it was driven at and near the place of the accident contributed directly to produce the disaster which resulted in the death of plaintiff's husband, independently of any negligence on the part of defendant Higgins, they must find for defendant Higgins.

12. " If the jury find from the evidence that the defendant Higgins and his employes, in using the derrick in question, exercised such care and caution as a prudent and careful man would ordinarily have used under like circumstances, and that the fall of the derrick was caused by something over which they had no control, they must find for defendant Higgins."

No instructions faithfully representing the law could, as we think, have put the case more fairly before the jury. It is objected that the words "due care," in the first instruction as numbered by us, are left without any definition ; so that it was possible for the jury to be misled by them. There was no such possibility. The extent and kind of care required, and therefore " due," were pointed out in the clearest way in the instructions which we have numbered 4, 5, 7, 12, in this opinion.

There was not the least foundation for a charge of contributory negligence on the part of the plaintiff's husband. The only thought offered in support of this charge is that if he had been seated within the car instead of standing on the rear platform he would not have been struck by the fatal

derrick. If this be good reasoning, then every unfortunate who was ever blown up in a steamboat explosion was guilty of contributory negligence in going on the boat, or in being within reach of the boiler. Had he stayed on shore, or had he occupied some other part of the boat, he might have been safe. It does not appear that, as is customary on steam railway trains, there was any regulation or request by the company that passengers should not occupy the platform. It does not appear that derricks have a known habit of falling upon the rear platform rather than any other parts of passing cars. It might be easier to show that an act of the defendant company's servant did more than anything else to justify the responsibility fixed upon his employer by this judgment. The car driver testifies that instead of looking at the guy rope when he approached it he was looking the other way, at a workman on the building ; that when he saw the derrick falling he whipped up his horses, and thus made it strike the rear platform instead of the middle of the car. Had he not done this the fall might have killed some passenger seated within the car. But it would have spared the life of the plaintiff's husband, and so have barred this action.

We have carefully considered the instructions which were offered by the defendants and refused by the court. We find in them nothing to which either defendant was entitled that does not sufficiently appear in the instructions given. We can not agree with learned counsel for the defendants that, as to the one or the other of them, there was no evidence of negligence proper to be left to a jury. If there is any evidence of a material fact in issue, no amount of force or conclusiveness in the testimony which rebuts it will authorize a court to take the question away from the triers of fact. The present case is one in which the undisputed physical fact — the disaster itself, without aid from its antecedents and surroundings — may indicate to a practical minded jury the unquestionable presence of negligence as its cause. Thus, the guy rope was in fact low enough to

be struck by the passing car, with whose customary height, structure, and hourly excursions along the track all parties were familiar. The juror, in his practical familiarity with current events and with their physical and moral causes, may legitimately consider that whatever the witnesses may say, the fact remains that the rope could not have been thus low if reasonable and proper care had been taken to fasten it at a safe elevation. He may also consider that the car driver in fact drove against the rope when it was too low for his car, and was in full view as he approached it, when a reasonable and proper amount of care would have prompted him to stop his horses instead. This view may well be strengthened by the consideration that, by the driver's own story, he was looking away from the rope when he drove up to and against it with sufficient force to pull down the derrick. We are not laying down a rule that negligence may always be inferred from the mere fact of personal injury by means of an agency under control of the party charged. We mean only to say that there may be ways of inflicting injury which are so easily and naturally guarded against by a moderate degree of care or forethought that they seem to be inseparable from an exhibition of the opposite qualities; and that so a rational inference of negligence may arise from the manner of the injury alone. When counsel insist that in this case all *prima facie* indications of negligence were met by overwhelming proofs of the contrary, and ask us to say that their clients left nothing undone which extreme care and prudence could suggest in the premises, we must answer that these propositions were exclusively for the jury and were fairly submitted to them in the instructions. We can not reverse their finding, whatever might be our own impressions from the weight of the testimony. All the judges concurring, the judgment is affirmed.