MISSOURI BUILDING AND LOAN ASSOCIATION, A CORPORATION, RESPOND-
ENT, v. NATIONAL LIBERTY INSURANCE COMPANY OF AMERICA,
A CORPORATION, APPELLANT.—89 S. W. (2d) 138.

St. Louis Court of Appeals. Opinion filed January 7, 1936.

*Leahy, Saunders & Walther, H. F. Hecker* and *Lyon Anderson* for
appellant.

*Frank X. Hiemenz* and *Albert F. Muench* for respondent.

BECKER, J.—This is an action by the payee against the drawer of a check upon which payment was stopped. A jury was waived and the cause tried before the court alone, resulting in the entry of a judgment for plaintiff, the payee, and against defendant, the drawer, in the aggregate sum of $2,968.70. The latter's appeal to this court has followed in the usual course.

So far as the material facts are concerned, it appears that one Dorson was the owner of certain premises at 4363 Delmar boulevard, in the city of St. Louis, against which there was an outstanding indebtedness of $5,118.06 secured by a first deed of trust executed in favor of plaintiff, Missouri Building and Loan Association. Three policies of fire insurance were carried by Dorson upon the property, two of which were issued by the Queen Insurance Company, and the other by defendant, National Liberty Insurance Company of America. Each policy was made payable to Dorson as owner, and to plaintiff, the mortgagee, as its interest might appear.

A fire occurred on the insured premises, causing considerable damage, and thereafter the loss was adjusted at the sum of $7,050, and prorated under the three policies according to the respective under-takings of the two insurance companies, the Queen Insurance Company assuming a liability of $4,846.87, and defendant a liability of $2,203.13. Defendant thereupon drew its check for the sum due from it, making the same payable to the order of both Dorson and plaintiff, and delivered the check to Dorson, by whom it was in turn endorsed and delivered to plaintiff's president, Hannauer, after the latter's delivery to Dorson of his own check for $1,931.93, such sum representing Dorson's individual interest as owner in the proceeds of the settlement with defendant. In the usual course of business Hannauer thereafter deposited the check from defendant to his personal account in a local bank, it having been indorsed over to him by plaintiff in the course of his adjustment of the matter as between plaintiff and the other parties concerned; and when the same was presented to the Central Union Trust Company of New York, the bank upon which it was drawn, payment of the check was refused upon defendant's order and its nonpayment duly protested.

It appears that payment of the check was stopped by defendant when one Bingham, who was generally engaged in the business of adjusting fire losses and who had represented Dorson in such capacity in the adjustment of his claim against the two insurance companies, served a notice upon defendant prior to the presentment of the check to the drawee bank for payment, claiming a lien upon the amount due Dorson under defendant's policy because of the services so performed for Dorson by him. Thereafter Bingham brought an attachment suit against Dorson in the Circuit Court of the City of St. Louis for the amount of his alleged fee, and in aid thereof caused defendant to be summoned as garnishee.

Following the service upon it of the summons to garnishee, defendant instituted an interpleader suit in the Circuit Court of the City of St. Louis, naming Dorson and Bingham as the parties defendant, but omitting to include the plaintiff herein as a party to that suit notwithstanding its known interest in the fund. In its petition in such suit defendant alleged the facts practically as we have heretofore stated them, and prayed that Dorson and Bingham be required to interplead for the sum admittedly due from defendant under its policy, in which sum defendant had no further interest and which it claimed to be then holding as a mere stakeholder for the parties entitled to it.

Thereafter the interpleader suit was compromised, an order being entered in the cause sustaining the bill of interpleader, and ordering defendant to pay into court the sum of $2,203.13, and upon such deposit in court to stand discharged of all its liability under its policy. Payment into court was thereupon made by defendant, and the fund

paid out to Dorson and Bingham, all in accordance with the terms of the settlement which had been made the basis of the judgment of the court.

Incidentally, Dorson received the sum of $1,917.58, and Bingham the sum of $265, the balance of the fund deposited into court by defendant having been applied to the payment of court costs in the interpleader suit.

Of course plaintiff received no part of the money so disbursed by the clerk of the court, its evidence being, in fact, that it had no knowledge of the institution or pendency of the interpleader suit until after the judgment entered therein had become final and all disbursements of the fund had been made. Defendant makes much of the fact that Hannauer, after payment of the check had been stopped, conferred on several occasions with both Dorson and his attorney relative to plaintiff's interest in the matter, and seeks to have the evidence viewed as showing that plaintiff looked to Dorson to collect the entire sum due from defendant. What defendant seems to have in mind is that if plaintiff were to be held to have authorized Dorson and his attorney to act for it in the premises, it would then be bound by the action they took in the matter notwithstanding the fact that plaintiff was not a party to the interpleader suit, and defendant's release from further liability under its policy by reason of the judgment rendered in that suit would inure to its benefit in the present action.

It is true, as defendant suggests, that Hannauer did confer with both Dorson and his attorney in regard to the consequences of defendant's act in stopping payment on its check, but to say the least, the most favorable view of the evidence in plaintiff's favor is far from showing a relationship of principal and agent between plaintiff and Dorson as respects the collection of the indebtedness due from defendant. Manifestly both plaintiff and Dorson had a mutual interest in the adjustment of the controversy with defendant, but nevertheless it would clearly appear that in bearing the burden of the negotiations with defendant subsequent to its stopping of payment on its check, Dorson was acting primarily for himself rather than for either Hannauer or plaintiff. This for the reason that Hannauer, as soon as defendant's check was protested for nonpayment, began pressing Dorson for the repayment of the amount Hannauer had theretofore paid to Dorson upon the receipt of defendant's check in purported settlement of its liability under its policy to both parties, and Dorson's subsequent dealings with defendant were therefore primarily designed and intended to protect himself against Hannauer's demands upon his by having defendant make its settlement good rather than to be compelled to repay Hannauer himself. However, Hannauer did have some direct negotiations with defendant and its local agency on his own account; and so far as the institution of the interpleader suit was concerned, not only did he have no knowledge of it until

after all disbursements had been made in accordance with the judgment rendered therein, but in fact he had been given to believe by Dorson's attorney that no such suit would lie if instituted by defendant, because defendant, by the delivery of its check to Dorson, had in effect parted with the fund which was represented thereby.

As we shall subsequently point out, the payee of a check, upon its nonpayment, may as a general rule sue the maker either upon the check itself or upon the original consideration, but in this instance plaintiff elected to sue upon the check, even though as mortgagee it might as well have sued upon the policy. Judgment was prayed for the sum of $2,203.13, the amount of the check, with interest thereon from April 10, 1928, the date of its protest for nonpayment; and judgment was entered by the court in all respects as prayed.

The answer set up that payment of the check had been stopped by defendant for good cause pursuant to the filing of Bingham's lien and the service upon it of the writ of garnishment; that defendant, by virtue of the judgment rendered in the interpleader suit, of the pendency of which plaintiff was alleged to have had full knowledge, had been released of all further liability under its policy; and that in any event plaintiff was not entitled to recover any sum in excess of $271.19, the balance due if the sum of $4,846.87 paid Dorson by the Queen Insurance Company were to be applied against the outstanding indebtedness of $5,118.06.

Plaintiff's reply was in effect a denial that it was in anywise bound and concluded by the judgment rendered in the interpleader suit to which it had not been made a party, the specific denial being made that it had had any knowledge of the pendency of such suit until long after the entry of the judgment disposing of the sum interpleaded and the disbursement of the fund by the clerk to the parties adjudged to be entitled to it.

As a matter of first insistence defendant argues that no case was made for submission to the court upon the facts, its theory being that inasmuch as Dorson, the owner, could have sued defendant for the whole sum due under its policy, occupying as to plaintiff, the mortgagee, the status of trustee of an express trust as to the portion of the sum due plaintiff, then correspondingly it was possible and proper for defendant to sue Dorson alone in the interpleader suit, and nevertheless bind and conclude plaintiff by the judgment rendered therein which was one affecting the proceeds of the policy.

We think this argument is obviously unsound. When either the trustee or the beneficiary sues the defendant upon the single cause of action which exists against him, a final adjudication of the case determines the defendant's liability under that one cause of action, and his satisfaction of a judgment recovered against him by either trustee or beneficiary protects him against a subsequent action by the other, since there was never but the one cause of action to assert.

[Rogers v. Gosnell, 51 Mo. 466; Seift & Co. v. Wabash R. Co., 149 Mo. App. 526, 531, 131 S. W. 124; Florea v. Iowa State Ins. Co., 225 Mo. App. 49, 32 S. W. (2d) 111; Anthony v. Germ. Amer. Ins. Co., 48 Mo. App. 65.] However in this instance defendant's liability under its policy was in no sense the question to be litigated in the interpleader suit, but instead the court was concerned solely with the respective interests of the two designated claimants to the fund which defendant admitted it owed and claimed to be holding with no further interest in the subject matter. [Lafayette-South Side Bank & Trust Co. v. Siefert, 223 Mo. App. 431, 18 S. W. (2d) 572; Granite Bituminous Paving Co. v. Stange, 225 Mo. App. 401, 37 S. W. (2d) 469; United Rys. Co. v. O'Connor, 153 Mo. App. 128, 132 S. W. 262.] In other words, the court was only called upon to adjudicate the individual claims of the defendants to the interpleader suit as between themselves, that is, as between Dorson and Bingham; and with plaintiff not a party to that suit, its own claim or interest in and to the fund interpleaded could not have been determined by the court, regardless of the fact that under other circumstances either it or Dorson might alone have maintained an action on the policy against defendant.

Nor, as we have already pointed out, was plaintiff to be concluded by the judgment rendered in the interpleader suit upon the theory that it was represented therein by Dorson, and could be held, under the facts of the case, to have promoted or participated in his defense thereof. There are indeed instances where one may have such connection with litigation as to be regarded as a party in interest therein and to be bound thereby even though not a party to the record, but such is not the present case, where Dorson was at all times primarily engaged in the furthering of his own interests rather than those of plaintiff, and where plaintiff did not even have knowledge of the pendency of the interpleader suit.

Something is also said in defendant's brief to the effect that plaintiff, as one of the original payees named in the check, was not a holder in due course, and was to be relegated for its cause of action, if any, to an action on the contract of insurance itself. This contention is likewise without merit. While plaintiff might indeed have sued upon the original consideration for the check, it was not obligated to have done so, but was entitled at its option to sue, as it did, upon the check itself of which it had become the sole owner by virtue of Dorson's indorsement of his interest in the same over to plaintiff for a valuable consideration. [5 R. C. L., sec. 68, p. 544; 8 C. J. 64.]

Finally defendant makes the point that the judgment is excessive. Upon the theory that plaintiff in any event should not be allowed to recover more than the amount of its mortgage debt which was the sum of $5,118.06, it argues that if the payments made by the Queen

Insurance Company amounting in the aggregate to $4,846.87 were applied against the mortgage debt, it would leave only the sum of $271.19 still due, which should be the limit of plaintiff's recovery in this action.

This method of calculation goes obviously in the very teeth of the terms of the settlement entered into between Dorson and the two insurance companies, and if allowed would have the effect of absolving defendant from the greater part of its acknowledged liability under its policy, while holding the Queen Insurance Company to the full measure of its undertaking. What Hannauer did was to subtract the mortgage debt of $5,118.06 from the sum of $7,050 paid by the two insurance companies in settlement of the loss, and by that method determined that Dorson was entitled to receive the sum of $1,931.93 in the adjustment, his calculation involving an error, incidentally, of one cent. Thus the rights and interests of all parties were fairly protected and adjusted by Hannauer, and plaintiff, by recovering in this action, and save for interest, will actually receive no more than the amount of its mortgage debt after allowance is made for Hannauer's payment to Dorson of the sum of $1,931.93.

The judgment rendered by the circuit court should be affirmed, and it is so ordered. *Hostetter, P. J.,* and *McCullen, J.,* concur.