B. Sherman Landau, Appellant, v. Fred Schmitt Contracting Company, a Corporation.—179 S. W. (2d) 138.

St. Louis Court of Appeals.   Opinion filed April 4, 1944.

Respondent's Motion for Rehearing Overruled April 21, 1944.

*Walter Wehrle* and *Willson, Cunningham & McClellan* for appellant.

*Moser, Marsalek & Dearing* for respondent.

912

HUGHES, P. J.—Appellant filed this suit to recover on account of damages alleged to have resulted to an apartment building owned by him by reason of blasting operations conducted by the respondent. The trial below, before the court and a jury, resulted in a verdict and judgment in favor of the respondent, and this appeal followed. We will herein refer to the parties as plaintiff and defendant, according to the position they occupied below, and narrate the facts with a few changes as contained in respondent's printed statement.

Plaintiff, in his petition, alleged that his property consisted of a three-family brick apartment with a brick garage and concrete driveway, located at 6401 Cates avenue, University City; that the property was located immediately south of the River Des Peres; that the City of University City and the Public Works Administration had entered into a contract to share the cost of constructing the River Des Peres drainage canal, on condition that the bids, contracts, insurance, bonds and supervision of the project should comply with the requirements of the Public Works Administration; that pursuant to the agreement University City advertised for bids, and that the defendant was the successful bidder. Plaintiff further alleged that defendant entered into a contract with University City for the construction of the sewer project through University City, and that the defendant agreed to comply with the requirements of the Public Works Administration; that the contract included provisions for the protection of adjacent property, care in the use of explosives and a provision that any damage caused to adjacent property should be promptly repaired by the contractor. That defendant entered into the construction of the sewer and in the course of the work used dynamite and other explosives; that vibrations caused by the blasting damaged plaintiff's property in the amount of $5700, for which sum plaintiff prayed judgment.

Defendant's second amended answer to plaintiff's petition was filed on January 29, 1942. Therein defendant, after a general denial, pleaded that plaintiff negligently failed to brace the structures on his land, after notice of defendant's intention to excavate; further, that plaintiff held the policies of two insurance companies, insuring plaintiff's property against damage by explosion; that he brought suit against one of the companies and recovered a judgment of $2650; that after the defendant's motion for a new trial had been overruled in said suit, on December 29, 1941, said insurance company paid plaintiff a sum in excess of the damages, if any, referred to in his petition, and that plaintiff assigned and transferred the alleged cause of action mentioned in his petition and any and all right, title and interest therein to said insurance company, and that the latter was the sole owner and holder of the cause of action, if any, and was the real party in interest.

On January 31, 1942, two days after defendant filed the foregoing answer, plaintiff signed a paper entitled ''loan agreement'' introduced in evidence as Plaintiff's Exhibit A.

On April 21, 1942, plaintiff filed a reply to said answer, and a motion for a separate trial of the issue of assignment set up therein, alleging that the trial of this issue would require the attendance of witnesses and the production of documents distinct from those required for the trial of the principal issue; that the defendant was aware that the allegation of assignment made by the answer was untrue and could not be substantiated, and that the issue was colorable and would confuse

the jury at the trial. The motion was submitted to the court and was overruled by the court on June 16, 1942.

On October 15, 1942, plaintiff filed his second amended reply to said answer, consisting of a general denial, and a plea that defendant by its contract had agreed to protect adjacent property from damage; that the cost of restoring adjacent property was included in the sum defendant had bid and received for the work, and that the contract relieved adjoining owners from any requirement to protect their property.

When the case was called for trial, on November 16, 1942, before the *voir dire* examination of the jury, plaintiff's counsel offered to introduce evidence to show that there had been no assignment of the plaintiff's cause of action to the insurance companies.

Defendant's counsel objected to any evidence being offered at that time, on the ground that such evidence would not be competent or binding on the defendant, in that the offer concerned an issue raised by the pleadings and which had been adjudicated by the court, and further that there was no rule permitting the introduction of evidence at that stage of the case. The court sustained defendant's objection, but permitted plaintiff to make an offer of proof. A colloquy ensued in which plaintiff's two attorneys, defendant's attorney and the court participated. Plaintiff's counsel admitted that plaintiff had sued the two insurance companies to recover his damage, and had recovered a verdict and judgment in one of the cases, but denied that the plaintiff had assigned his cause of action. He stated that the insurance companies and plaintiff had entered into a ''loan agreement,'' whereupon the judgment obtained by plaintiff against the one insurance company had been set aside, and the cases dismissed. Defendant's counsel objected to the offer of proof on the ground that such proof could not affect the issues raised by the pleadings; that the answer had been attacked by motion, that the motion had been overruled and the question thereby adjudicated. Counsel further objected to the offer of proof because defendant was not bound by the terms of the written instrument, and that the real terms of the agreement would be an issue of fact for the jury. Plaintiff's counsel charged that defendant had no evidence to sustain the defense that the plaintiff was not the real party in interest, and defendant's counsel stated that if he could prove the facts in plaintiff's case that would be sufficient.

The court in the course of the colloquy stated a number of reasons for his ruling rejecting the offer of proof. He stated that the plaintiff had asked for a separate trial of the issue, and that the court at a prior term had ruled on the motion, and that such ruling was binding. The court further stated that whether the agreement between plaintiff and the insurance companies was a loan agreement, a settlement or an

assignment was a question for the jury, upon which the defendant's counsel had a right to cross-examine the plaintiff.

After plaintiff's offer of proof had been·rejected Mr. Wehrle, one of plaintiff's counsel, made an objection to any statement that defend-·ant's counsel might make on *voir dire* examination or opening state-ment to the jury, or any questions addressed to any witness, or any offer to introduce any testimony of any facts relating to the plaintiff's cases against the insurance companies, on the ground that such matter was incompetent, immaterial and irrelevant to any of the issues, highly prejudicial to the plaintiff, and would inject a false and fictitious issue into the case. Counsel concluded his objection with the statement, "We will have to ask for a mistrial and discharge of the jury." The court overruled plaintiff's said objection.

An effort was then made to obtain an agreement from defendant's counsel as to the terms of the objection, and in the course of the discussion defendant's counsel, in response to·a remark of the court that the issue was for the jury, said "That may be determined at the particular time." Mr. Wehrle was attempting to incorporate in his objection what had been stated theretofore by Mr. Cunningham, his co-counsel. Defendant's counsel rejected this suggestion, on the ground that Mr. Cunningham accused defendant's counsel of bad faith. Mr. Cunningham then stated, "No, that is not to be con-sidered."

Mr. Wehrle then asked defendant's counsel whether the latter would agree and stipulate on the objection he, Mr. Wehrle, had made, and defendant's counsel replied in the affirmative, stating "it goes all the way through the case." It was also agreed that exceptions should be saved as a matter of course.

The above account summarizes the occurrences prior to the im-paneling of the jury.

After the jury was impaneled defendant's counsel made an opening statement to the jury in which he referred to the suits brought by the plaintiff against the two insurance companies; that after the plaintiff obtained judgment against one of the companies, he made a settlement with the two companies and received a sum of approximate-ly $3,000.00, the exact amount not being known to counsel; that the plaintiff was not the real party in interest, but that he was suing for the two insurance companies, and that the attorney who appeared in the case on trial, as attorney of record for plaintiff, appeared as attorney for the insurance company in the suit brought against it by the plaintiff.

The trial was lengthy, and involved the examination of a large num-ber of witnesses. To show the nature of the blasting done by the de-fendant, and the alleged damage to his building, garage and concrete driveway alleged to result therefrom, plaintiff testified in his own behalf and called a number of witnesses, lay and expert. His expert

witnesses, A. R. Schollmeyer, a real estate man, and E. R. Kinsey, a civil engineer, testified that plaintiff's property was damaged by the blasting.

Defendant's evidence consisting mainly of expert witnesses was to the effect that the defects found in the building did not result from blasting, but from structural faults, including the fact that the building was constructed upon filled ground and had settled. Plaintiff's evidence was that the building was not on filled ground. Defendant's contentions were supported by the testimony of John Wunderlich, architect; Nelson Cunliff, civil engineer, and James B. Macelwane, professor of geophysics and seismology at St. Louis University.

On the issue raised by defendant's answer, that plaintiff was not the real party in interest, plaintiff testified on cross-examination that in his suit against the insurance companies, Mr. Cunningham, one of his attorneys in the case on trial, represented the defendants. One of the suits resulted in a judgment in plaintiff's favor of $2,650.00. In each case he sought to recover part of the damage to the apartment building, and in one of the suits for damage to the garage also. He testified that he had no insurance on the driveway, and partial coverage on the garage.

On redirect examination plaintiff stated that, in the case that was tried, the insurance company was defending on the ground that the property was not damaged by dynamite blasting, and that the jury returned a unanimous verdict that it was damaged by blasting done by Fred Schmitt Contracting Company; that after the insurance company, represented by Mr. Cunningham, lost that case, the insurance company filed a motion for a new trial; that while the motion was pending, the trial of the case against the second insurance company commenced, and while that case was being tried plaintiff and Mr. Cunningham entered into the loan agreement. Plaintiff then introduced in evidence the "loan agreement" as his Exhibit A, it being as follows:

"Loan Agreement.

"Received of Anchor Insurance Company and National Liberty Insurance Company of America, jointly, the total sum of Three Thousand Three Hundred Dollars ($3,300.00), as a loan, without interest, repayable only to the extent of fifty percent (50%) of any net recovery (computed by deduction from the gross recovery a contingent attorney's fee of thirty-three and one-third percent (33⅓%), court costs and witness fees and their expenses reasonably paid) which the undersigned may make from Fred Schmitt Contracting Company or any affiliated firm, [or The Hartford Accident & Indemnity Company, which bonded and insured said Fred Schmitt Contracting Company], or from any person, firm or corporation, on account of damage to property located at 6401 Cates Avenue, University City, Missouri, due to explosions, blasting, and the acts of said Fred Schmitt Con-

tracting Company, its employees, agents and representatives, in connection with the sewer laid by said firm immediately north of said property, particularly during the months of October, November and December of 1939.

"In consideration of said loan the undersigned hereby fully releases said Anchor Insurance Company and National Liberty Insurance Company of America, their respective representatives, successors or assigns, from all further liability on account of said loss to said property.

"As security for the repayment of such loan I hereby pledge to said Insurance Companies, jointly and severally, half of said net recovery, and hereby agree to prosecute the claim against said Fred Schmitt Contracting Company [and its insurance company, The Hartford Accident & Indemnity Company]. Said claim is to be prosecuted by means of the action now pending against Fred Schmitt Contracting Company in the Circuit Court at Clayton, Missouri, which said action is being defended by Moser, Marsalek & Dearing, Attorneys [for The Hartford Accident & Indemnity Company]. Walter Wehrle, Attorney at Law, shall continue to act as attorney for the plaintiff in said suit and shall receive a contingent attorney's fee of thirty-three and one-third (33⅓%) percent mentioned above.

"In consideration of said loan I hereby warrant unto said Insurance Companies that I have not knowingly, directly or indirectly released or discharged the said Fred Schmitt Contracting Company, [Hartford Accident & Indemnity Company], or any other person, firm or corporation responsible for said damage from any liability, claim, or cause of action on account of having caused said damage and will not release or discharge such parties without the written consent of each of said Insurance Companies.

"Executed at St. Louis, Missouri, this 31st day of January, 1942.
"Witnesses:                                          B. Sherman Landau.
"J. H. Cunningham, Jr."

The words appearing in Exhibit A in brackets were deleted before the exhibit was read to the jury, being objected to by defendant.

On recross-examination plaintiff testified that his coverage was $10,-000.00 with one insurance company and $5,000.00 with the other. That after the court had overruled the defendant's motion for a new trial in the case in which plaintiff obtained the $2650.00 verdict, plaintiff and Mr. Cunningham agreed that the ruling should be set aside, and plaintiff received $3300.00 from the insurance companies. Plaintiff said, "He agreed to loan me the money."

At the close of all the evidence the Court ruled as a matter of law that plaintiff was the real party in interest, refused defendant's instruction C on the subject, and ruled that defendant could not argue to the jury that plaintiff was not the real party in interest. After argument to the court, the defendant excepted to the court's ruling.

Other pertinent facts will appear in the course of the opinion.

After argument by counsel, the jury found for defendant. Plaintiff filed his motion for a new trial and same being overruled took the present appeal.

The first assignment of error is the overruling of plaintiff's motion for a separate trial of the allegation in the answer that plaintiff was not the real party in interest, but assigned his cause of action to insurance companies which had insured his property against damage from explosions and had paid the damage. The second assignment of error, which was in effect a renewal of plaintiff's motion for a separate trial, was the overruling of a motion when the case was called for trial, to exclude any statements of counsel, or evidence relative to insurance policies carried by plaintiff, or suits filed by plaintiff on such policies, or of any settlement made by plaintiff with such insurance companies. The two assignments may be considered together.

The issues tendered by the answer were as follows:

First: A denial that plaintiff had been damaged by defendant. This presented an issue of fact to be tried by a jury.

Second: That plaintiff was notified of defendant's intention to construct the sewer, and plaintiff was guilty of contributory negligence in failing to guard against damage to his property. There was no merit to that allegation, and it was not pressed by defendant in the trial.

Third: That plaintiff had received pay from his insurers for his alleged damages. There was no merit to that allegation. Plaintiff had bought and paid for his insurance contracts, and whatever he received from his insurers was not paid or received to satisfy in whole or in part defendant's liability, and defendant could not derive any advantage therefrom in mitigation of damages for which it was liable. To permit a defendant wrongdoer to profit or reap any advantage from plaintiff's insurance would be to allow a wrongdoer to pay nothing and take the benefit of a policy of insurance for which it had paid no part of the premium,—in other words, to reap where it had not sown. Cases cited by appellant settle this point: Mathews v. St. Louis & S. F. Ry. Co., 121 Mo. 298, 24 S. W. 591; Mathews v. Missouri Pac. Ry. Co., 142 Mo. 645, 44 S. W. 802; Erhart v. Wabash R. Co., 136 Mo. App. 617, 118 S. W. 657; Swift & Co. v. Wabash R. Co., 149 Mo. App. 526, 131 S. W. 124.

Fourth: That plaintiff had assigned his cause of action to the National Liberty Insurance Company of America. This allegation was not a plea of facts which would show an assignment, but was simply a bold assertion and conclusion of the pleader that an assignment had been made, and really tendered no issue. [Ford v. Wabash Railway Co., et al.; St. Louis Transfer Co., App., 318 Mo. 723, l. c. 735, 300 S. W. 769; Kramer v. Kansas City Power & Light Co., 311 Mo. 369, 279 S. W. 43.]

However, regardless of the sufficiency of the answer, the vital question as presented before us is whether the trial court exercised a sound discretion in refusing to try the issue of assigned cause of action before trying the cause on its merits.

Section 1102, Revised Statutes 1939, provides that where there are several issues in a cause, and the court shall be of the opinion that all or any of them should be tried separately by the court or jury, it may, on the application of either party direct separate trials. Neither party has an absolute right to demand and have a separate trial of an issue involved in the cause of action, but when such application is made it becomes a matter for the sound discretion of the court as to whether it should be granted. In a case very analogous to this, except that a separate trial was granted, the Kansas City Court of Appeals, in Sexton v. Anderson Electric Car Co. (Mo. App.), 234 S. W. 358, construing what is now Section 1102, said, ''The clear intent of the statute is to prevent confusion in deciding the several issues. The statute is not mandatory; the granting of separate trials thereunder is purely within the discretion of the court, and this discretion will not be reviewed unless it clearly appears it has been abused. [Stone v. Perkins, 217 Mo. 586, 607, 117 S. W. 717; Speer v. Burlingame, 61 Mo. App. 75; Hunt v. Missouri R. Co., 14 Mo. App. 160.] For the reasons above stated, the trial court committed no error in granting separate trials of the issues involved.''

Such is the settled law, but it is equally well settled that we should not blindly accept the discretion of the trial court where it clearly appears that such discretion was not soundly exercised. The discretion of the trial court is not absolute, and is subject to review. [Williams v. Columbia Taxicab Co. (Mo. App.), 241 S. W. 970.] Whether the lower court really and soundly exercised its discretion in the matter brought to its attention is subject to our review. [State ex rel. and to Use of Piepmeier v. Camren, 226 Mo. App. 100, 41 S. W. (2d) 902.] And still more to the point is the statement from the Supreme Court in the case of Mertens v. McMahon, 334 Mo. 175, 66 S. W. (2d) 127, l. c. 133, as follows:

''When, as here, it is proper and necessary to join the plea to the jurisdiction and the plea to the merits in the same answer, it is held to be in the discretion of the trial court, and the better practice is to have separate trials of these issues, trying the question of jurisdiction first, as was done in this case. [Byler v. Jones, 79 Mo. 261, 263-264; Harris v. McQuay (Mo. App.), 300 S. W. 305. See section 951, R. S. 1929 (Mo. St. Ann., sec. 951, p. 1223); Clark v. Railroad, 234 Mo. 396, 413, 137 S. W. 583; Roberts v. American Nat. Assur. Co., 201 Mo. App. 239, 245, 212 S. W. 390.]''

It is no longer a debatable question that testimony showing that an insurance company is interested financially in the result of the trial is prejudicial. [Buehler v. Festus Mercantile Co., 343 Mo. 139,

119 S. W. (2d) 961; Rytersky v. O'Brine, 335 Mo. 22, 70 S. W. (2d) 538.] It has been held that where there has been no good reason shown for the injection of the question of insurance in the case, that the appellate court will indulge in the legal presumption that it was not done in good faith. [Robinson v. McVay (Mo. App.), 44 S. W. (2d) 238; Nolen v. Halpin-Dwyer Const. Co., 225 Mo. App. 224, 29 S. W. (2d) 215.]

Of course, we must determine whether the court exercised a sound discretion from the matters before the court at that time, and yet viewing the case on appeal after the trial, it is significant that defendant did not have a scintilla of evidence on which to base its charge that the cause of action had been assigned, and the trial court finally held and properly so that there was no evidence to prove such allegation. So far as the evidence shows, defendant's claim was founded solely on speculation and suspicion. There are many cases holding that an assignment, whether by subrogation or by written instrument does not transfer the cause of action. [Swift & Co. v. Wabash R. Co., *supra*; First National Bank of Kansas City v. Produce Exchange Bank, 338 Mo. 91, 89 S. W. (2d) 33, l. c. 38; Gould v. Chicago B. & Q. R. Co., 315 Mo. 713, 290 S. W. 135; Missouri Building & Loan Ass'n. v. National Liberty Ins. Co. of America, 232 Mo. App. 85, 89 S. W. (2d) 138; Central Fibre Products Co. v. Bacher, 232 Mo. App. 854, 112 S. W. (2d) 379; Florea et al. v. Iowa State Ins. Co., 225 Mo. App. 49, 32 S. W. (2d) 111; Keeley v. Indemnity Co. of America (Mo. App.), 7 S. W. (2d) 434.]

Much is said about Exhibit A. Respondent contends that it is not bound by that paper because of not being a party to it, and then takes the position that the paper prescribes in detail the manner in which the claim against the defendant was to be prosecuted, and that the paper itself shows an assignment of the cause of action.

Although defendant was not a party to, and ordinarily would not be bound by, plaintiff's agreement with his insurers, yet, when defendant based its claim that plaintiff had assigned his cause of action on the written agreement which plaintiff had made with his insurers, then defendant was bound by the terms of that agreement. [Schneider v. Kirkpatrick, 80 Mo. App. 145; Slaughter v. Sweet & Piper Horse & Mule Co. (Mo. App.), 259 S. W. 131.]

Exhibit A was signed by plaintiff two days after the filing of defendant's answer, but it appears in evidence that defendant's attorney had been advised of plaintiff's settlement with his insurers, and what had been done, long before the answer was filed. However, it is not merely a question of whether defendant was in good faith in alleging an assignment of the cause of action, but did the court exercise a sound discretion in refusing to try that question in advance of a trial on the merits.

As to whether Exhibit A. shows an assignment of the cause of action on its face was not really an issue for a jury, the exhibit not being ambiguous. The force and effect of written documents is for the court. [Roach-Manigan Paving Co. v. Southwestern Surety Ins. Co. (Mo.), 238 S. W. 119.]

Of course the court may not have known, when ruling on the motion for a separate hearing, that the facts attending plaintiff's settlement with his insurers had been reduced to writing, but in view of the assertion of defendant as stated in its answer that there had been an assignment of the cause of action, and the emphatic denial by plaintiff that there had been an assignment of the cause of action, and an offer to show exactly what was done, the court in the exercise of sound discretion would have asked counsel on what he based the charge before denying a separate hearing.

The record does not show what took place before the court (Judge Wolfe) when the motion was overruled, but even though the motion was presented without evidence, as defendant now says, yet, from the very nature of the allegation, to-wit, an assignment of the cause of action, when in good faith attacked by plaintiff, and the question going directly to plaintiff's right to institute or to proceed further with the case, in the exercise of a sound discretion the court should have granted the motion, and it would then have held against defendant's claim of assignment, as it did do after trial, and prevented the prejudicial testimony going before the jury. That testimony showing the interest of an insurance company in the result of the case is likely to govern the jury's verdict is exemplified in this case in the care which defendant's able counsel exercised in insisting that all reference to the fact that defendant was indemnified by insurance be deleted from Exhibit A. before it was read to the jury.

However, the record does show what took place when the motion or objection was made immediately before impaneling the jury, to any statement made by defendant's counsel or to any evidence on the issue of assignment. Although the record shows that in the colloquy following the motion or objection plaintiff's counsel stated, "I am not asking a separate trial of the issues. All I am asking is an opportunity to offer evidence in support of my motion," yet, the object then sought was the same as in the motion for a separate trial. It was a request that the court hear the evidence on that issue and determine the issue, and not permit it to be heard by the jury. And the court was not only in error in refusing the request for the reason that Judge Wolfe had passed on it, but such refusal was a disclaimer by the then judge of his right to exercise a discretion. The then judge was no more bound by the prior judge's ruling on a procedural matter than if he had himself made the prior ruling. It would be a dangerous precedent to establish to say that a trial judge cannot correct an

erroneous ruling made in the progress of a cause as to a matter of procedure.

In the trial of the case the plaintiff was cross-examined at length as to what insurance he had and the settlement he had made with his insurers, and it was shown that he had two policies, one for a coverage of $10,000 and the other for $5,000, and that he had received from the insurance companies $3300. To say that such testimony was not prejudicial to his cause would be contrary to the experience of every lawyer who tries damage suits.

If Section 1102 means anything at all, this is clearly a case wherein it should have been invoked. Plaintiff was entitled to a fair trial, uninfluenced by prejudicial evidence, on the issues involved in the case on its merits, and the court did not exercise a sound discretion in refusing to determine who was a proper party plaintiff before the trial of the case on its merits.

A considerable part of the briefs and arguments are devoted to the question of whether appellant properly saved exceptions to the admission of evidence regarding plaintiff's insurance before the jury and plaintiff's motion to discharge the jury during the trial of the cause. These questions become moot in view of our holding that error was committed by the court in refusing a separate trial of the issues.

The case should be reversed and remanded for a new trial. It is so ordered. *McCullen* and *Anderson, JJ.*, concur.