ERVIN, Judge.
Independent Fire Insurance Company (appellant here) appeals a summary final judgment entered in favor of loma Butler (appellee here).
*981 This dispute involves the proceeds of a fire insurance policy issued to Alma and Elvin Williamson on a dwelling located in Pensacola. Alma Williamson died in July, 1975. The dwelling was left to her three children, loma Butler being one of them. An endorsement on the policy made loma Butler the named insured. After Alma’s death, Mr. Williamson continued to live in the dwelling until December 1975. Ble applied to have the electricity shut off on December 2, 1975, and it was actually shutoff on December 4, 1975. Mr. Williamson testified during his deposition on July 14, 1976, that he did not spend the night in the house after the electricity was discontinued and continued to move belongings and furniture from the house during the daylight hours until December 28, 1975.[1] The house burned oh February 9, 1976, at which time there were still a few of Mr. Williamson’s belongings in the house.
The policy provision in question reads as follows:
Conditions suspending or restricting insurance. Unless otherwise provided in writing added hereto this Company shall not be liable for loss occurring:

(b) While a described building, whether intended for occupancy by owner or tenant, is vacant or unoccupied beyond a period of sixty consecutive days;
loma Butler filed suit to collect the insurance proceeds which amounted to $8,000.00. The insurance company resisted, relying upon the above mentioned provision in the policy which eliminated its liability under the policy when the dwelling “is vacant or unoccupied beyond the period of sixty consecutive days.” Both parties moved for summary judgment. In its final judgment, the trial court awarded loma Butler the entire amount due under the policy ($8,000.00), attorney’s fees in the amount of $2,000.00, and costs.
The insurance company raises as error the trial court’s order denying its motion for summary judgment and granting loma Butler’s motion for summary judgment. We disagree that the trial court erred in denying the company’s motion for summary judgment, but believe the cause should be remanded for trial.
Although there are no Florida decisions directly on point, the Fourth District Court of Appeal examined a fire insurance policy provision containing the same language as the provision here in question in Hehemann v. Michigan Miller’s Mutual Insurance Company, 240 So.2d 851 (Fla. 4th DCA 1970). We find the Hehemann decision helpful in its definitions of the terms “vacancy” and “occupancy”. The court stated:
The term “vacancy” as used in the policy applies to inanimate objects, whereas “Occupancy” refers to animate objects. 33 (sic) Am.Jur.2d Insurance § 947. With the exception of the drapes, the dwelling was devoid of every item of furniture and furnishings for a period of more than thirty days prior to the fire. We have no difficulty in determining that as a matter of law, the drapes notwithstanding, the house was vacant within the definition of that term as used in the policy. We think the trial court cogently stated the status of the property in this respect when he posed the rhetorical question, “How vacant can you get?” 240 So.2d at 854.
We note that the facts in this case do not support a finding that the dwelling was “vacant” as a matter of law since Mr. Williamson testified that nearly all of his furniture was left in the house when he quit sleeping there and it took him five or six trips to remove the furniture or until December 28, 1975 (well within the sixty day period) before he finished moving his belongings. In fact, there were still a few remaining items of furniture in the house when it burned down.
The only question for our consideration is whether the facts support a finding that the dwelling was “unoccupied” for a period of more than sixty consecutive days.
*982 The term “occupied” refers to a dwelling which is in actual use by human beings who are living in it as a place of habitation, and a dwelling is “unoccupied” when it has ceased to be a customary place of habitation or abode, and no one is living or residing in it. Generally, the mere fact that furniture or goods are stored or left in a dwelling is not of itself sufficient to prevent the building from being considered unoccupied. Moreover, it is not essential that someone sleep in a dwelling in order to render it occupied. Rather, occupancy is largely a matter of intent. It does not of necessity involve a continuous bodily presence upon the insured premises. Courts construing the words “occupied” and “unoccupied” will look to the nature and character of the building, the purposes for which it is designed, and the uses contemplated by the parties as expressed in the insurance contract. 43 Am.Jur.2d Insurance § 947-949, pages 896 through 899.
Whether Mr. Williamson intended for the dwelling to remain his home after December 4, 1975, is, on the record of this case, a question of fact which can only be resolved by the trier of facts. Upon facts strikingly similar to these the St. Louis Court of Appeals in Graves v. M. F. A. Mutual Insurance Co., 446 S.W.2d 154 (Mo.App.1969), so concluded: There, the policy excluded coverage in the event the house were vacant or unoccupied for 10 days prior to a fire. The plaintiffs had moved out of the insured house, which they owned, two months before the fire and had had the electricity and the phone disconnected. They returned to the house from time to time to mow the lawn and dust the furniture they had left inside. The court stated:
[T]he policy only required that the premises be not unoccupied for a period of more than ten days, without in anywise undertaking to specify the character of the occupancy, other than that it might be by either the owner or his tenant. The proof is clear that the tenant was in charge of the premises even up to the time of the fire, and that he was continually exercising all the prerogatives which went along with his right to occupy the house. Whether he was inside of it every day does not appear, but he was at least in control of it. Under these circumstances, we think it was for the trier of the facts, to say whether the building described in the policy became unoccupied and remained so for ten days before the occurrence of the loss .
Id. at 157-58.
In this case Mr. Williamson testified on deposition, contrary to a prior written statement given to the insurance company, that he occupied the house until December 28, by returning at regular intervals for the purpose of removing personal items from the house. His written statement, however, reflected that his occupancy ceased on December 10, 1975. It is therefore necessary for the trier of facts to resolve the question of Mr. Williamson’s intent. This question cannot be answered by summary judgment.
Reversed and remanded for further proceedings consistent with this opinion.
BOYER, Acting C. J., and MILLS, J., concur.

. A written statement given to the insurance company by Williamson on March 30, 1976, contradicted his deposition testimony by stating he left the house on December 10, 1975, or 61 days prior to the fire.